**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PAMELA A. HUNTER,
                    *Plaintiff-Appellant,*

            and

FRED L. WILLIAMS; TIMOTHY
HARDEN; FLOYD LOVE, on behalf of
themselves and all others similarly
situated,                                                        No. 00-2543
                    *Plaintiffs,*

            v.

EARTHGRAINS COMPANY BAKERY;
ANHEUSER-BUSCH COMPANIES, INC.;
CAMPBELL TAGGART COMPANY,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-97-179-3-P)

Argued: October 31, 2001

Decided: January 30, 2002

Before MICHAEL, MOTZ,* and KING, Circuit Judges.

---

   *Judge Motz served on the argument panel of this case but has since recused herself from it. This decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

Suspension from practice vacated by published opinion. Judge King wrote the opinion, in which Judge Michael joined.

---

**COUNSEL**

**ARGUED:** Ned Clifton Cannon, Jr., Gastonia, North Carolina, for Appellant. Anderson Butler Scott, FISHER & PHILLIPS, L.L.P., Atlanta, Georgia, for Appellees. **ON BRIEF:** Pamela A. Hunter, Charlotte, North Carolina, for Appellant.

---

**OPINION**

KING, Circuit Judge:

By Order of October 23, 2000, appellant Pamela A. Hunter, a practicing attorney in Charlotte, North Carolina, and an active member of the North Carolina State Bar, was suspended from practice in the Western District of North Carolina for five years. Ms. Hunter appeals this suspension, imposed upon her pursuant to Rule 11 of the Federal Rules of Civil Procedure. As explained below, we conclude that her appeal has merit, and we vacate her suspension from practice by the district court.

I.

Ms. Hunter, along with her co-counsel N. Clifton Cannon and Charlene E. Bell, represented a group of workers at a Charlotte, North Carolina, bakery owned by appellee Earthgrains Company Bakery ("Earthgrains").[1] These three lawyers filed a class action lawsuit

---

[1]The Earthgrains Company Bakery, Anheuser-Busch Companies, Inc., and Campbell Taggart Company were all defendants in the First Lawsuit. Campbell Taggart was at one time a wholly-owned subsidiary of Anheuser-Busch. In 1996, Anheuser-Busch spun-off Campbell Taggart to its shareholders, and the newly independent company changed its name to Earthgrains Company Bakery. We refer to the appellees collectively as Earthgrains.

against Earthgrains on February 24, 1997, in the Superior Court of Mecklenburg County (the "First Lawsuit"). The class action complaint, verified by the three named plaintiffs, alleged violations of Title VII of the Civil Rights Act of 1964, and it also asserted fraudulent misrepresentation on the part of Earthgrains in the closing of its Charlotte bakery. Earthgrains promptly removed the First Lawsuit to the Western District of North Carolina.

Earthgrains responded to the class action complaint on April 15, 1997. The plaintiffs thereafter filed certain motions in the district court, specifically: (1) seeking certification of the class (filed September 4, 1997); (2) to amend the complaint (filed September 4, 1997); (3) to amend the motion for class certification (filed January 30, 1998); and (4) for intervention by other plaintiffs (filed April 3, 1998).[2] The plaintiffs also filed responses to several motions made by Earthgrains. Throughout the wrangling concerning the various motions, Ms. Hunter and her co-counsel maintained certain essential assertions, including: (1) that a pattern and practice of racial discrimination existed at Earthgrains' Charlotte bakery; (2) that the workers there were more skilled, but paid less, than those at other Earthgrains bakeries; (3) that the hourly wage workforce at the Charlotte bakery was predominantly African-American, while the workforce at other Earthgrains bakeries was predominantly white; and (4) that Earthgrains management had represented to its Charlotte employees that the Charlotte bakery was profitable and would remain open after a corporate spinoff, but that it was nonetheless closed. The plaintiffs alleged various incidents of racial discrimination by Earthgrains, including an assertion by an Earthgrains manager that he wanted to change the "complexion" of the workforce in the Charlotte bakery. Earthgrains denied the allegations of the First Lawsuit and moved for summary judgment, contending, first, that its Charlotte employees were bound to arbitrate their Title VII claims under their collective bargaining agreement (the "Earthgrains CBA"); second, that the plaintiffs had failed to establish a prima facie case of racial discrimination; and

---

[2]The motion to intervene named 199 individual plaintiffs as necessary parties to the First Lawsuit, presumably a precaution in the event class certification was not granted. Earthgrains does not appear to have responded to this motion, nor did the district court rule upon it, though the court mentioned the motion in its sanctions order.

third, that if a prima facie case had been shown, the plaintiffs had failed to rebut Earthgrains' legitimate nondiscriminatory reasons for closing its Charlotte bakery. In response, the plaintiffs consistently asserted, inter alia, that the Earthgrains CBA did not apply to the Title VII claims at issue.

By Order entered on April 22, 1998, the district court awarded summary judgment to Earthgrains.[3] It concluded that the plaintiffs were obligated to arbitrate under the Earthgrains CBA, and alternatively, that they had failed to rebut the nondiscriminatory reasons proffered by Earthgrains for the closing of its Charlotte bakery. Further, the court determined that the plaintiffs had failed to establish a prima facie case of fraudulent misrepresentation under North Carolina law. The court included in its Order a sua sponte directive that plaintiffs' lawyers show cause why Rule 11 sanctions should not be imposed on them for their conduct in the First Lawsuit (the "Show Cause Order").[4] On May 6, 1998, the lawyers responded to the Order, seeking reconsideration of the summary judgment decision and requesting a stay of the Show Cause Order pending their appeal of the summary judgment award. By Order of July 21, 1998, the stay was granted and reconsideration of the summary judgment was denied.

On February 9, 1999, Ms. Hunter and Mr. Cannon filed another lawsuit against Earthgrains in North Carolina state court concerning the closing of the Charlotte bakery. This complaint (the "Second Lawsuit") was not of the class action variety, but instead named individual plaintiffs and alleged the tort of fraudulent misrepresentation under North Carolina law. In response, Earthgrains filed its own lawsuit in the Western District of North Carolina, seeking an injunction under 28 U.S.C. § 2281 (the Anti-Injunction Act), and asserting that the Second Lawsuit constituted a collateral attack on the summary judg-

---

[3]By its April 22, 1998 Order, the court also denied the plaintiffs' Motion to Amend Complaint. It concluded that plaintiffs had failed to comply with the pretrial order and that the proposed amendment was futile.

[4]In the Show Cause Order, the court stated that it appeared the plaintiffs' attorneys had not made a sufficient prefiling inquiry before initiating suit. Further, the court noted that the plaintiffs had filed four motions, *see supra* at 3, which appeared to violate Rule 11.

ment awarded to Earthgrains on April 22, 1998. The Second Lawsuit was voluntarily dismissed on May 4, 1999.

On April 21, 1999, this Court affirmed the summary judgment award to Earthgrains, concluding that plaintiffs had failed to rebut the legitimate, nondiscriminatory rationale offered by Earthgrains for the closing of its Charlotte bakery, and also concluding that plaintiffs had failed to make a prima facie showing of fraudulent misrepresentation under North Carolina law. *Williams v. Earthgrains Co. Bakery*, 178 F.3d 1289 (4th Cir. 1999) (unpublished). In that decision, we explicitly declined to address whether the plaintiffs were required under the Earthgrains CBA to submit their claims to arbitration. *Id.*

On May 3, 2000, Ms. Hunter filed another complaint against Earthgrains in North Carolina state court (the "Third Lawsuit"), this time alleging the tort of negligent misrepresentation under North Carolina law. The Third Lawsuit, which Earthgrains promptly removed to the Western District of North Carolina, arose from the same essential facts and circumstances as the two earlier cases. Thereafter, on October 23, 2000, the district court concluded that federal jurisdiction was lacking, and it remanded the Third Lawsuit to state court.

For over two years, from May 1998 until June 2000, no action was taken with respect to the Show Cause Order of April 22, 1998. On June 16, 2000, however, Earthgrains filed a motion in district court seeking Rule 11 sanctions against Ms. Hunter and her co-counsel, entitled "Motion for Rule 11 Sanctions Pursuant to Show Cause Order" (the "Sanctions Motion"). The bases asserted for the motion were twofold: (1) the Fourth Circuit had affirmed summary judgment for Earthgrains, and (2) plaintiffs' lawyers (Ms. Hunter in particular) had filed two subsequent lawsuits on the same facts. On July 17, 2000, Ms. Hunter and her co-counsel filed a "Memorandum in Objection" to the Sanctions Motion, pointing out that the Show Cause Order related only to the First Lawsuit, and referring the court to their response to the Show Cause Order, filed on May 6, 1998, as establishing their compliance with Rule 11.

On October 23, 2000, the district court entered the order we are called upon to review in this appeal. *Williams v. Earthgrains Co. Bakery*, Order, No. 3:97CV179-P (W.D.N.C. Oct. 23, 2000) (the "Sanc-

tions Order"). Finding the attorneys' behavior to be sanctionable, the court barred Ms. Hunter from the practice of law in the Western District of North Carolina for a period of five years. It also reprimanded Ms. Hunter's co-counsel, and it admonished them "to be conscious of and strictly abide by the provisions of Rule 11 in the future."[5] The court based its Sanctions Order on the following:

> (a)   first and foremost, counsel's assertion of a legal position contrary to the holding of our 1996 decision in *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir. 1996), which the court characterized as a "frivolous legal contention." Sanctions Order at 7;

> (b)   counsel's lack of judgment and skill; and

> (c)   Ms. Hunter's sanction by the same court eleven years earlier.

Ms. Hunter has timely appealed the suspension imposed upon her, maintaining that Rule 11 sanctions are unwarranted and that her suspension from practice was an overly severe penalty. We possess jurisdiction under 28 U.S.C. § 1291.

## II.

## A.

We review for abuse of discretion a district court's imposition of Rule 11 sanctions on a practicing lawyer.[6] Advisory Committee Notes

---

[5]Neither of Ms. Hunter's co-counsel in the First Lawsuit have appealed. As such, we generally refer in this opinion to Ms. Hunter only.

[6]Rule 11 of the Federal Rules of Civil Procedure was first promulgated in 1937, and it was substantially amended in 1983 to increase its effectiveness and clarify the circumstances in which it applied. Rule 11 was further revamped in 1993, primarily to curb the collateral litigation resulting from the 1983 amendments and to introduce the notion of a "safe harbor" from Rule 11 sanctions. Rule 11(b), which contains most of the provisions relevant to this appeal, currently provides in relevant part as follows:

to the 1993 Amendments, Fed. R. Civ. P. 11 ("Note, FRCP 11"); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). Of course, an error of law by a district court is by definition an abuse of discretion. *Hartmarx*, 496 U.S. at 405; *United States v. Pearce*, 191 F.3d 488, 492 (4th Cir. 1999). As the Supreme Court has observed in the Rule 11 context, if a district court "rel[ied] on a materially incorrect view of the relevant law in determining that a pleading was not 'warranted by existing law or a good faith argument' for changing the law," we are justified in concluding that the district court abused its discretion. *Hartmarx*, 496 U.S. at 402.

B.

Although Rule 11 does not specify the sanction to be imposed for any particular violation of its provisions, the Advisory Committee Note to the Rule's 1993 amendments provides guidance with an illustrative list. A court may, for example, strike a document, admonish a lawyer, require the lawyer to undergo education, or refer an allegation to appropriate disciplinary authorities. Note, FRCP 11; *see also Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 455 (5th Cir. 1998) ("[W]hen a district court finds that a disciplinary sanction more

---

*(b) Representations to Court.* By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances —

(1) it is not being presented for any improper purpose, . . .;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support . . .; and

(4) the denials of factual contentions are warranted . . . .

Fed. R. Civ. P. 11(b).

severe than admonition, reprimand, or censure under Rule 11 is warranted, it should refer the matter to the appropriate disciplinary authorities."). While a reviewing court owes "substantial deference" to a district court's decision to suspend or disbar, *In re Evans*, 801 F.2d 703, 706 (4th Cir. 1986), it is axiomatic that asserting a *losing* legal position, even one that fails to survive summary judgment, is not of itself sanctionable conduct. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1977); *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998) (noting that losing argument "well within the bounds of fair adversarial argument" was not sanctionable).

Under Rule 11, the primary purpose of sanctions against counsel is not to compensate the prevailing party, but to "deter future litigation abuse." *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990) (disallowing award of attorneys' fees which compensated defendants "rather than . . . deter[ring] improper litigation").[7] Importantly, a sua sponte show cause order deprives a lawyer against whom it is directed of the mandatory twenty-one day "safe harbor" provision provided by the 1993 amendments to Rule 11.[8] In such circumstances, a court is obliged to use extra care in imposing sanctions on offending lawyers. *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001) (noting that sua sponte Rule 11 sanctions for allegedly baseless legal claims are to be examined closely as there is no "safe harbor" available). The Advisory Committee contemplated that a sua sponte show cause order would only be used "in situations that are akin to a contempt of court," and thus it was unnecessary for Rule 11's "safe harbor" to apply to sua sponte sanctions. Note, FRCP 11. Furthermore, when imposing sanctions under Rule 11, a court must limit the penalty to "what is sufficient to deter repetition of such conduct," and "shall describe the conduct determined to constitute a vio-

---

[7]The circumstances involving Ms. Hunter are unusual, in that the notion of sanctions was first raised by the court sua sponte in April 1998. However, sanctions were not imposed until after a motion was filed more than two years later by Earthgrains. This distinction is important because, as we shall explain, differing standards apply.

[8]The "safe harbor" of Rule 11 forbids filing or presenting a motion for sanctions to the court "unless, within 21 days after service of the motion . . ., the challenged paper . . . is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A).

lation of this rule and explain the basis for the sanction imposed."
Fed. R. Civ. P. 11(c).[9]

### III.

### A.

In considering this appeal, we first address the inordinate delay
between issuance of the Show Cause Order in April 1998 and entry
of the Sanctions Order in October 2000.[10] While Rule 11 sanctions
may be imposed when a case is no longer pending, *Cooter & Gell v.
Hartmarx Corp.*, 496 U.S. 384 (1990), the delay here — absent an
adequate explanation — contravenes the Rule's purposes. Indeed, the
Supreme Court has observed that "[a]lthough Rule 11 does not estab-
lish a deadline for the imposition of sanctions, the Advisory Commit-
tee did not contemplate that there would be a lengthy delay prior to
their imposition." *Id.* at 398 (interpreting Rule 11 prior to its 1993
amendments and finding plaintiff's voluntary dismissal did not
deprive court of jurisdiction to award attorney's fees); *In re Kunstler*,
914 F.2d 505, 513 (4th Cir. 1990).

If we construe the suspension of Ms. Hunter as having been
imposed pursuant to Earthgrains' motion of June 2000, it presents a
serious timeliness problem.[11] It is important that such a motion be

---

[9]An order levying sanctions should spell out with specificity both the
legal authority under which the sanctions are imposed and the particular
behavior being sanctioned. Fed. R. Civ. P. 11; *Nuwesra v. Merrill Lynch,
Fenner & Smith, Inc.*, 174 F.3d 87, 92-94 (2d Cir. 1999). Although there
are multiple sources of authority for the imposition of sanctions, not all
sanctions upon lawyers are appropriate under each source; thus, a court
must ensure that the authority relied upon supports the sanctions
imposed. *See Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997).

[10]Although the issue of timeliness was not raised in the initial briefing,
it was discussed at oral argument and in post-argument briefs. In that
connection, a dispute arose between counsel concerning a supplemental
joint appendix requested by us. In resolution, we grant Ms. Hunter's
motions to file the supplemental appendix and to file a corrected brief.
We further grant Earthgrains' motion to supplement the supplemental
appendix, and we overrule their objection to the supplemental appendix.

[11]When Local Rules are in place to govern the timeliness of Rule 11
motions, we abide by them. *See Ortega v. Geelhaar*, 914 F.2d 495 (4th
Cir. 1990). We have identified no such rules in this case.

"served promptly after the inappropriate paper is filed, and, if delayed too long, [it] may be viewed as untimely." Note, FRCP 11; *Morgan-roth & Morganroth v. DeLorean*, 123 F.3d 374, 384 (5th Cir. 1997). Indeed, the "safe harbor" provisions of Rule 11(c)(1)(A) preclude the serving and filing of any Rule 11 motion after conclusion of the case. Note, FRCP 11 ("Given the 'safe harbor' provisions . . ., a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)."). Although we have not held the safe harbor provision to be jurisdictional, we recently noted that many courts have decided that compliance with it is mandatory. *Rector v. Approved Fed. Sav. Bank*, 265 F.3d 248, 251 (4th Cir. 2001); *see, e.g., Hutchinson v. Pfeil*, 208 F.3d 1180, 1183-84 (10th Cir. 2000) (noting that motion filed after summary judgment challenging interlocutory disputes would have been untimely under Rule 11); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) (concluding that "a party cannot wait until after summary judgment to move for sanctions under Rule 11"); *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) (same).

Earthgrains waited for fourteen months after this Court affirmed the summary judgment award in the First Lawsuit — from April 1999 to June of 2000 — to initially move for Rule 11 sanctions against Ms. Hunter. In this case, Earthgrains failed in its obligation to "notify[ ] [its] opponent and the court of [its] intention to pursue sanctions at the earliest possible date." *Kunstler*, 914 F.2d at 513. While Ms. Hunter has not asserted prejudice from the late filing and lack of notice, we are unable to find them excusable. Sanctions should operate as educational tools, and this "exemplary function is ill served when sanctions are delayed." *Prosser v. Prosser*, 186 F.3d 403, 405 (3d Cir. 1999).[12]

---

[12]In a decision rendered prior to the "safe harbor" amendment in 1993, we observed that no absolute time limit governed Rule 11 motions, and considerations of timeliness "are equitable, and must be resolved on a case by case analysis." *Kunstler*, 914 F.2d at 513. Our analysis of the circumstances of this case, in addition to *Kunstler*'s instruction that sanctions should not be granted where there is an "inordinately long time" between the conclusion of the case and the motion, compel the conclusion that Earthgrains' Sanctions Motion was fatally tardy. *Id.*

If, as Earthgrains' counsel suggests, we should construe the suspension of Ms. Hunter as being a sua sponte action of the court, we run head-on into the legal principle that a court should resolve sua sponte Rule 11 issues before resolution of the merits of the case.[13] If, as Earthgrains now contends, the suspension was imposed sua sponte, we must examine the court's assertion that Ms. Hunter's legal contention was frivolous "with particular stringency." *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001).

In these confusing circumstances, we will accord Earthgrains the benefit of the doubt, and we will assume the suspension of Ms. Hunter was imposed sua sponte. Notwithstanding our serious concern over the delay in its imposition, we will proceed to examine the suspension of Ms. Hunter.

B.

The primary basis for the suspension of Ms. Hunter is that she advanced a frivolous legal position in the First Lawsuit. By presentation of a pleading to a court, an attorney is certifying, under Rule 11(b)(2), that the claims and legal contentions made therein "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." In its Sanctions Order, the district court found the legal assertions of Ms. Hunter to be "utter nonsense" that were "paradigmatic of a frivolous legal contention." Sanctions Order at 7.

We have recognized that maintaining a legal position to a court is only sanctionable when, in "applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998) (internal citations and

---

[13]Indeed, the Court of Appeals for the Third Circuit, by way of example, has adopted a supervisory rule requiring that "a district court should raise and resolve sua sponte Rule 11 sanctions issues prior to or concurrent with its resolution of the merits of the case." *Prosser*, 186 F.3d at 405 (internal quotation omitted). Any appeal of the final order then includes the sanctions order, and all issues are reviewed in a single appeal.

quotations omitted). That is to say, as Judge Wilkins recently explained, the legal argument must have "absolutely no chance of success under the existing precedent." *Id.* Although a legal claim may be so inartfully pled that it cannot survive a motion to dismiss, such a flaw will not in itself support Rule 11 sanctions — only the lack of any legal or factual basis is sanctionable. *Simpson v. Welch*, 900 F.2d 33, 36 (4th Cir. 1990). We have aptly observed that "[t]he Rule does not seek to stifle the exuberant spirit of skilled advocacy or to require that a claim be proven before a complaint can be filed. The Rule attempts to discourage the needless filing of groundless lawsuits." *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987). And we have recognized that "[c]reative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (quoting *Davis v. Carl*, 906 F.2d 533, 536 (11th Cir. 1990)).

In its Sanctions Order, the court maintained, with respect to Ms. Hunter, that "[p]laintiffs' standing to file suit was challenged based on a binding arbitration clause in the [Earthgrains] CBA. Plaintiffs' response to this gateway issue rested on a tenuous, if not preposterous, reading of the CBA and applicable law."[14] Sanctions Order at 5. The court was correct that the legal position it found frivolous — that a collective bargaining agreement ("CBA") arbitration clause must contain specific language to mandate arbitration of a federal discrimination claim — had been rejected by us four years earlier in *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir. 1996). However, our reasoning in *Austin*, as of April 22, 1998 (when the Show Cause Order issued), stood alone on one side of a circuit split. Six of our sister circuits (the Second, Sixth, Seventh, Eighth, Tenth, and Eleventh) had taken the legal position contrary to *Austin*

---

[14]The Show Cause Order asserted that failure to make a reasonable prefiling inquiry and the filing of motions violated Rule 11. The Sanctions Order focused primarily on the pursuit of a purportedly frivolous legal position. We note that a show cause order should be sufficiently precise to place an attorney on notice of the conduct alleged to be sanctionable. Fed. R. Civ. P. 11(c)(1)(B); *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 454 (5th Cir. 1998); *Johnson v. Waddell & Reed*, 74 F.3d 147, 151 (7th Cir. 1996).

on whether a CBA could waive an individual employee's statutory cause of action. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997) (finding that allowing judicial forum for individual statutory claim under CBA displays fidelity to Supreme Court precedent); *Brisentine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 526-27 (11th Cir. 1997) (finding that "mandatory arbitration clause in a collective bargaining agreement does not bar litigation of a federal statutory claim" and disagreeing with *Austin*); *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1453-54 (10th Cir. 1997) (adopting majority view and noting that only this circuit required arbitration of federal statutory claims when CBA contains an arbitration clause); *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 363 (7th Cir. 1997) (rejecting *Austin* and adopting majority view); *Varner v. Nat'l Super Markets, Inc.*, 94 F.3d 1209, 1213 (8th Cir. 1996) (allowing pursuit of Title VII claim in judicial forum under CBA); *Tran v. Tran*, 54 F.3d 115, 117 (2d Cir. 1995) (deciding that plaintiff need not have arbitrated before pursuing lawsuit).[15] In point of fact, and consistent with the foregoing, none of our sister circuits, as of April 1998, had agreed with the position we took in *Austin*.

The circuit split evidenced by these decisions concerned whether collective bargaining agreements containing general language required arbitration of individuals' statutory claims, such as those arising under the ADEA and Title VII. The disagreement of the circuits on this issue resulted from varying interpretations of the Court's decisions in *Alexander v. Gardner-Denver Company*, 415 U.S. 36 (1974), and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).[16] This Court, in *Austin*, had deemed *Gilmer* to be the control-

---

[15]On May 8, 1998 (shortly after issuance of the Show Cause Order), the Ninth Circuit rejected *Austin* in its decision in *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir. 1998).

[16]In its 1974 decision in *Alexander*, the Court determined that an employee who had filed a grievance in accordance with a CBA did not forfeit a Title VII discriminatory discharge lawsuit, and it distinguished between contractual and statutory rights. In 1991, the Court concluded in *Gilmer* that there was a presumption of arbitrability, and that an age discrimination claim could be subject to compulsory arbitration. Ms. Hunter, in response to the Show Cause Order, explained her basis for the First Lawsuit by making the pertinent observation that *Gilmer* involved an individual employment contract, while *Alexander* concerned arbitration under a CBA. She accordingly asserted that the *Alexander* decision controlled in the First Lawsuit.

ling authority, while the other circuits chose the alternate route, finding the Court's decision in *Alexander* to control.

In opposition to Earthgrains' summary judgment motion, Ms. Hunter repeatedly relied upon the Supreme Court's decision in *Alexander* (failing, however, to rely on the decisions of the six circuits that had followed *Alexander*). She further sought to align her case against Earthgrains with *Alexander* by discussing the generality of the applicable clause of the Earthgrains CBA, which included the agreement not to "illegally discriminate." She contended that this provision was not sufficiently specific to require her clients to arbitrate.

The district court was particularly concerned with Ms. Hunter's attempt to distinguish her case from our decision in *Brown v. Trans World Airlines*, 127 F.3d 337 (4th Cir. 1997). She maintained to the court that *Brown* had distanced itself from *Austin* on essentially the same facts, and she inferred from this the reluctance of our *Brown* panel to follow *Austin*. Ms. Hunter argued that, as in *Brown*, "the provisions of the collective bargaining agreement which allegedly proscribe racial discrimination, do not mention Title VII, 42 U.S.C. § 1981 or common law fraud," and that "the language of the collective bargaining agreement between plaintiffs and defendant is not sufficient to require plaintiffs to first arbitrate their claim." Earthgrains contended, on the other hand, that the agreement "not to *illegally* discriminate" in the Earthgrains CBA compelled arbitration of Title VII claims under *Austin*. The district court agreed with Earthgrains and based its suspension of Ms. Hunter largely on this legal contention. As we have pointed out, however, there was a good-faith basis for Ms. Hunter to assert the position she propounded. We would be reaching to conclude that, as of 1998, Ms. Hunter's position had "no chance of success" under existing law. *Sargent*, 136 F.3d at 352. And subsequent legal developments render Ms. Hunter's position on the *Austin* issue not only tenable, but most likely correct.

On November 16, 1998 — nearly two years before the Sanctions Order of October 23, 2000 — the Supreme Court decided that, in order for a CBA to waive individuals' statutory claims, it must at least "contain a clear and unmistakable waiver of the covered employees' rights to a judicial forum for federal claims of employment discrimination." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 82

(1998). The Court declined to address whether even a clear and unmistakable waiver of the right to take one's statutory discrimination claim to court would be enforceable. *Id*. It also observed that "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA," and that a clause requiring arbitration of "matters under dispute" was not sufficiently explicit to meet the standard. *Id.* at 80. The Court distinguished its earlier decision in *Gilmer* on the basis that *Gilmer* involved "an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees," and thus it was not subject to the "clear and unmistakable standard." *Id.* at 80-81; *see also supra* n.16. When the district court suspended Ms. Hunter for advancing a legal position that was "not the law of this circuit," *see* Sanctions Order at 7, it was itself propounding a legal proposition in conflict with the Supreme Court's *Wright* decision.[17]

In *Blue v. United States Dept. of the Navy*, 914 F.2d 525 (4th Cir. 1990), we had occasion to address a Rule 11 sanctions issue in a similar, but distinguishable, context. We there affirmed an award of sanctions where the attorneys had pursued a claim after it became clear that it was factually without merit. Of significance, the plaintiffs' counsel had espoused a legal position contrary to circuit precedent (regarding the necessary showing for a prima facie case of discrimination), but arguably more consistent with Supreme Court authority. *Id.* at 537. In *Blue*, the district court recognized that the question of law at issue was "in a state of flux," and it declined to impose Rule 11 sanctions based on the legal contention being asserted. *Id.* In this appeal, the suspension of Ms. Hunter was in large part premised on her legal contention on the arbitrability of discrimination claims under the Earthgrains CBA, a legal position being asserted in connection

---

[17]After *Wright* was decided in 1998, and prior to the Sanctions Order of October 2000, our Court examined CBA provisions similar to the one at issue in this case and found that they did not compel plaintiffs to arbitrate. *See Carson v. Giant Food*, 175 F.3d 325, 331-32 (4th Cir. 1999); *see also Brown v. ABF Freight Sys.*, 183 F.3d 319, 322 (4th Cir. 1999) (finding "legally dispositive" difference "between an agreement not to commit discriminatory acts that are prohibited by law and an agreement to incorporate, in toto, the antidiscrimination statutes that prohibit those acts").

with a body of law that was "in a state of flux." Indeed, the district court sanctioned Ms. Hunter for advocating a legal proposition supported by a majority of our sister circuits, which was later substantially adopted by the Supreme Court.

In pursuing the First Lawsuit, Ms. Hunter, under Rule 11(b)(2), was plainly entitled (and probably obligated),[18] to maintain that *Austin* was incorrectly decided. While she could expect the district court to adhere to *Austin*, she was also entitled to contemplate seeking to have this court, en banc, correct the error (perceived by her) of its earlier *Austin* decision. If unsuccessful, she might then have sought relief in the Supreme Court on the basis of the circuit split. Indeed, our good Chief Judge, in his *Blue* decision, observed that if it were forbidden to argue a position contrary to precedent,

> the parties and counsel who in the early 1950s brought the case of *Brown v. Board of Ed.*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), might have been thought by some district court to have engaged in sanctionable conduct for pursuing their claims in the face of the contrary precedent of *Plessy v. Ferguson*, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896). The civil rights movement might have died aborning.

*Blue*, 914 F.2d at 534.

This astute observation of Judge Wilkinson is especially pertinent in the context of this case. The district court's erroneous view of the law in its suspension of Ms. Hunter necessarily constitutes an abuse of discretion. *Hartmarx*, 496 U.S. at 405. Although Ms. Hunter and the other lawyers (i.e., her co-counsel and the lawyers for Earthgrains) failed to provide the court with a thorough exposition on the

---

[18]*See* North Carolina Rule of Professional Conduct 1.3 cmt. (2001) ("A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 444 (1988) ("In searching for the strongest arguments available, the attorney must be zealous and must resolve all doubts and ambiguous legal questions in favor of his or her client.") (discussing criminal defense attorneys).

circuit split and the Supreme Court's decision in *Wright*, their lack of thoroughness does not render her position frivolous. Because Ms. Hunter's legal contentions in the First Lawsuit on the issue of arbitrability were not frivolous, her suspension from practice in the Western District of North Carolina on this basis does not withstand scrutiny.

## C.

Although the district court enunciated two other bases for its suspension of Ms. Hunter, neither of them supports the suspension.[19] First, in its Sanctions Order, the court broadly observed that Ms. Hunter had demonstrated a "lack of judgment and skill." Sanctions Order at 7. Other than its conclusion on the frivolous nature of Ms. Hunter's legal contentions on the CBA issue, no other basis was specified for her lack of judgment and skill. As we have pointed out, a court, especially when acting sua sponte, must particularize the behavior it deems sanctionable, and it may only impose the sanction necessary to deter future misconduct. *See* Fed. R. Civ. P. 11(c) (requiring court entering sua sponte order to "describ[e] the specific conduct that appears to violate" the Rule, and authorizing sanction "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated"); *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 454-55 (5th Cir. 1998) (finding general assertion in show cause order of failure to produce evidence insufficient to support sanction for inadequate prefiling inquiry). In these circumstances, where the lone basis of its support has failed, a broad assertion that a lawyer is lacking in "judgment and skill" does not pass muster under Rule 11.[20]

---

[19]The district court properly rejected the assertion by Earthgrains that the filing of the Second and Third Lawsuits constituted improper subsequent behavior on the part of Ms. Hunter and also supported her suspension. It is clear that "Rule 11 sanctions are properly applied only to cases before the court, not to cases in other courts." *Woodard v. STP Corp.*, 170 F.3d 1043, 1045 (11th Cir. 1999).

[20]We note that the district court lacked authority under the federal rules to sanction Ms. Hunter for conduct occurring in state court, including the filing of the First Lawsuit. *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 257 (4th Cir. 1987).

Second, the district court relied upon a previous incident involving Ms. Hunter in further support of its Sanctions Order. In 1989, this district judge sanctioned Ms. Hunter for failure to conduct an adequate prefiling inquiry under the pre-1993 version of Rule 11. *See Lyles v. K-Mart Corp.*, 703 F. Supp. 435 (W.D.N.C. 1989). Because we have found Ms. Hunter's conduct in the First Lawsuit does not warrant sanctions, there is no improper conduct in this case for the 1989 incident to support, and it is rendered irrelevant.[21]

### D.

Finally, Ms. Hunter maintains that her five-year suspension from practice in the Western District of North Carolina was overly severe, in that it was not the minimum sanction necessary to deter further violations of Rule 11. In view of our conclusion that Rule 11 sanctions were unwarranted, we need not reach this issue or the related issue of notice of the possible penalty.

### IV.

Pursuant to the foregoing, we vacate the suspension of Ms. Hunter from practice in the Western District of North Carolina, as set forth in the Sanctions Order of October 23, 2000.

*SUSPENSION FROM PRACTICE VACATED*

---

[21]Earthgrains also maintained that the suspension of Ms. Hunter was supported by a second sanction against her in 1988 in the Superior Court for Gaston County. However, the sanction was apparently against Ms. Hunter's client — not against her — and it was nevertheless vacated. *Brown v. Rhyne Floral Supply Mfg. Co.*, 366 S.E.2d 894 (N.C. Ct. App. 1988). We therefore grant Earthgrains' motion, filed after oral argument of this appeal, to withdraw its reference to the *Brown* case.