**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1962**

AUGUST MACK ENVIRONMENTAL, INC.,

               Plaintiff – Appellant,

     v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

               Defendant – Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Thomas S. Kleeh, District Judge.  (1:18-cv-00012-TSK)

Argued:  October 26, 2020                Decided:  January 7, 2021

Before KING and DIAZ, Circuit Judges, and Stephanie A. GALLAGHER, United States District Judge for the District of Maryland, sitting by designation.

Vacated and remanded by unpublished opinion.  Judge King wrote the opinion, in which Judge Gallagher joined.  Judge Diaz wrote a dissenting opinion.

**ARGUED:**  Philip R. Zimmerly, BOSE MCKINNEY & EVANS, LLP, Indianapolis, Indiana, for Appellant.  Katelin Shugart-Schmidt, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Bradley R. Sugarman, Andrew M. McNeil, BOSE MCKINNEY & EVANS LLP, Indianapolis, Indiana, for Appellant. Jeffrey Bossert Clark, Assistant Attorney General, Eric Grant, Deputy Assistant Attorney General, Evelyn Ying, Austin Saylor, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Benjamin Cohan, Lee Tyner, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

The plaintiff in these proceedings, August Mack Environmental, Inc., seeks to recover nearly $2.7 million in costs incurred cleaning up a contaminated industrial property in Fairmont, West Virginia, that has been designated as a so-called "Superfund" site under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The defendant, the Environmental Protection Agency (the "EPA"), dismissed August Mack's administrative claim. In principal part, the EPA determined that August Mack's failure to properly seek preauthorization for the cleanup work precluded a recovery of its costs from the Superfund. When August Mack sought review of the EPA's adverse decision in the Northern District of West Virginia, the district court dismissed the operative complaint under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. *See* Order Granting Motion to Dismiss Amended Complaint, *August Mack Env't, Inc. v. EPA*, No. 1:18-cv-00012 (N.D. W. Va. July 11, 2019), ECF No. 46 (the "Dismissal Order"). August Mack appeals from the court's judgment and, as explained herein, we vacate and remand.

I.

A.

In July 2000, the thirty-eight-acre contaminated industrial property in Fairmont — known as the Big John's Salvage–Hoult Road Superfund Site (the "BJS Site," or simply the "Site") — was added to the EPA's National Priorities List (the "NPL"), which rendered

3

the BJS Site eligible to receive money from the Superfund for cleanup.[1]  The Site includes land historically used in the operation of a coal tar refining facility and for salvage and waste disposal operations.  Reilly Tar and Chemical Corporation owned a portion of the Site and operated a coal tar processing plant there for about forty years, from at least 1933 to 1973.  Domestic Coke Corporation sold crude coal tar to Reilly until 1948 and owned a railroad right-of-way that traversed a portion of the Site.  In January 1973, Reilly sold the property to Big John's Salvage, Inc., which operated a junk salvage facility on the Site until approximately 1984.  Big John's Salvage accepted and stored waste materials that contained hazardous substances and various salvageable materials, including crushed non-saleable fluorescent light bulbs, lead dust, oil containing mercury, drummed liquid wastes, and other wastes from Westinghouse Electric's light bulb manufacturing plant.

The foregoing uses of the BJS Site resulted in its adulteration with contaminated tar and other hazardous substances.  After the Site was placed on the NPL, the EPA identified Vertellus Specialties, Inc., ExxonMobil Corporation, and CBS Corporation as "Potentially Responsible Parties" under CERCLA.[2]  On October 10, 2012, the three Potentially

---

[1] The facts spelled out herein are drawn from the record on appeal, and are primarily from August Mack's operative complaint against the EPA and the complaint's exhibits, one of which is the Consent Decree that governed cleanup of the BJS Site.

[2]  A Potentially Responsible Party under CERCLA means "any person who may be liable pursuant to section 107(a) of CERCLA, 42 U.S.C. 9607(a), for response costs incurred and to be incurred by the United States."  See 40 C.F.R. § 304.12(m).  Vertellus is the successor-in-interest to Reilly with respect to the BJS Site.  Further, ExxonMobil is the successor-in-interest to Domestic Coke, and CBS is the successor-in-interest to Westinghouse.

Responsible Parties entered into a Consent Decree with the EPA and the West Virginia Department of Environmental Protection. The Potentially Responsible Parties were explicitly listed as being bound by the Consent Decree, which further provided that "[n]othing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree." *See* Consent Decree, *August Mack Env't, Inc. v. EPA*, No. 1:18-cv-00012, at 77 (N.D. W. Va. June 1, 2018), ECF No. 23-1. Further, according to the Consent Decree's terms, the Northern District of West Virginia was given jurisdiction over the subject matter of the Consent Decree.

Pursuant to the Consent Decree, Vertellus was required to perform cleanup work on the Site, as specified and approved by the EPA. With the EPA's approval, Vertellus hired August Mack, the plaintiff here, as the supervising contractor of the Site's cleanup. August Mack is an Indiana-based environmental firm that provides, among other things, regulatory compliance and remediation services.

Additionally, the Potentially Responsible Parties were required to provide the EPA with nearly $37 million in cash and financial assurances to be used to clean up the BJS Site, which constituted funds specific thereto. These Site-specific funds served as a performance guarantee for the cleanup efforts. Under the Consent Decree, if Vertellus ceased performing the cleanup work, or if the EPA determined that Vertellus's work was unsatisfactory, the EPA could issue a Work Takeover Notice. Such a Notice would trigger the EPA's rights to take custody of the Site-specific funds and allow the EPA to complete the work itself.

5

August Mack performed cleanup work at the BJS Site for more than three years, from about October 2012 to May 2016. The EPA monitored and approved all of August Mack's actions during those cleanup efforts. For example, August Mack prepared and submitted a Removal Design Work Plan that specifically identified the cleanup work to be conducted, which the EPA then reviewed and approved. August Mack also engaged in other pre-design investigation activities, including evaluation of sediment, soil, and groundwater, in support of the Work Plan.

August Mack expected to be reimbursed for its work at the BJS Site by Vertellus or from the $37 million in Site-specific funds. In May 2016, Vertellus declared Chapter 11 bankruptcy and notified the EPA that it would cease cleanup efforts at the BJS Site. Pursuant to the Consent Decree, the EPA issued a Work Takeover Notice of the Site and assumed responsibility for the cleanup operations. The Site-specific funds were then transferred to the EPA and placed in a Special Account.

After Vertellus filed for bankruptcy, August Mack made a series of efforts to recover nearly $2.7 million it had expended in cleaning up the BJS Site and had not been paid. August Mack unsuccessfully filed claims against Vertellus in bankruptcy court. It also requested reimbursement of its response costs from both CBS and ExxonMobil, but those requests were rejected. In January 2017, August Mack requested that the EPA reimburse it from the Superfund or from the Special Account. The EPA denied any reimbursement or recovery to August Mack.

6

B.

In March 2017, August Mack appealed the EPA's denial of reimbursement to the EPA's Office of Administrative Law Judges and was accorded an administrative hearing. The EPA moved for a dismissal of the August Mack administrative proceedings. On December 18, 2017, an EPA administrative law judge (the "ALJ") granted the EPA's motion to dismiss, ruling that August Mack had not secured the agency's express preauthorization, pursuant to 40 C.F.R. § 307.21(b), before it sought reimbursement from the Superfund for the response costs it had incurred in cleaning up the BJS Site.[3] More specifically, the ALJ applied a strict compliance standard and faulted August Mack for failing to fill out and submit the EPA's preauthorization form, i.e., EPA Form 2075-3. In so doing, the ALJ rejected August Mack's contention that substantial compliance with the preauthorization process is sufficient and that strict compliance is not required. Additionally, the ALJ denied August Mack's claim for disbursement from the Special Account because August Mack was not a party to the Consent Decree and because the ALJ lacked jurisdiction over those Site-specific funds.

On January 17, 2018, August Mack filed its action in the Northern District of West Virginia, pursuant to 42 U.S.C. § 9612(b)(5), requesting court review of the ALJ's denial of its administrative claim for reimbursement from the Superfund. August Mack later

---

[3] In relevant part, 40 C.F.R. § 307.21(b) provides that response costs will be eligible for payment from the Superfund if the "response action is preauthorized by the EPA pursuant to § 307.22" and the "costs are incurred for activities within the scope of EPA's preauthorization." The preauthorization process is further explained in § 307.22.

7

amended its complaint to add a claim for reimbursement from the Special Account. The EPA then filed a motion in the district court to dismiss the operative complaint under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

By its Dismissal Order of July 11, 2019, the district court granted the EPA's motion to dismiss, being satisfied that the ALJ had not acted arbitrarily or capriciously in denying August Mack's reimbursement claims. According to the Dismissal Order, August Mack had neither sought nor received preauthorization from the EPA and was therefore ineligible for reimbursement from the Superfund. The court rejected August Mack's argument that the doctrine of substantial compliance applies to the question of whether a claimant has fulfilled the preauthorization requirements for Superfund reimbursement. The court also ruled that August Mack could not recover its response costs from the Special Account because August Mack was not a party to the Consent Decree. This appeal followed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a district court's dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004). In assessing a Rule 12(b)(6) motion, the court is obliged to "accept as true all of the factual allegations contained in the complaint." *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (internal quotation marks omitted). When an appeal to a court of appeals relates to a district court's dismissal of a complaint involving review of an agency decision, the

8

agency ruling is not to be vacated absent an "arbitrary or capricious abuse of discretion" by the agency. *See* 42 U.S.C. § 9612(b)(5). An abuse of discretion occurs when the agency action is arbitrary or capricious. *See United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (recognizing that a "district court abuses its discretion when it acts arbitrarily"); *United States v. Torrez*, 869 F.3d 291, 321 (4th Cir. 2017) (explaining that under the abuse of discretion standard, we "must determine whether the court's exercise of discretion[] . . . was arbitrary or capricious"). Of course, an error of law also constitutes an abuse of discretion. *See Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002).

III.

CERCLA created the federal Superfund to clean up uncontrolled and abandoned hazardous waste sites, as well as accidents, spills, and other emergency releases of pollutants and contaminants into the environment. Through CERCLA, the EPA has the authority to seek out the accountable parties and assure their cooperation in the necessary cleanups. Generally, the Potentially Responsible Parties must either perform the cleanup or reimburse the EPA for its cleanup work. Section 111 of CERCLA, however, authorizes payments from the Superfund for, inter alia, reimbursement of private parties for response costs. More specifically, section 111(a)(2) of CERCLA provides for "payment of any claim for necessary response costs incurred by another person as a result of carrying out" the National Contingency Plan (the "NCP"), provided that the "costs must be approved

9

under said plan and certified by the responsible Federal official." *See* 42 U.S.C. § 9611(a)(2).[4]

While not required by statute, CERCLA's implementing regulations mandate that a claimant intending to recover from the Superfund must apply for and obtain approval of response costs prior to beginning the cleanup activities. *See* 40 C.F.R. § 307.22(a). A claim must be "preauthorized by EPA pursuant to § 307.22" and may include only costs "incurred for activities within the scope of EPA's preauthorization." *Id.* § 307.21(b). Under the CERCLA regulations, a "preauthorization" is defined as the "EPA's prior approval to submit a claim against the [Superfund] for necessary response costs incurred as a result of carrying out" the NCP. *Id.* § 307.14. To obtain the EPA's prior approval, the regulations state that a claimant must submit an application for preauthorization before commencing a response action. *Id.* §§ 307.14, 307.22(a).

In this situation, August Mack did not seek or obtain an express preauthorization from the EPA before its cleanup of the BJS Site, by using EPA Form 2075-3 or otherwise. Nevertheless, August Mack maintains that it is entitled to recover from the Superfund. August Mack's position on appeal is that it only needs to demonstrate substantial compliance with the preauthorization process, and that, in any event, strict compliance was impossible because EPA Form 2075-3 has been obsolete for more than twenty years. As

---

[4] The NCP is the federal government's blueprint for responding to oil spills and releases of hazardous substances. The NPL — where the BJS Site was listed in 2000 — is Appendix B of the NCP.

explained below, we agree that it was legal error for the EPA to require strict compliance, rather than substantial compliance. Thus, the EPA's decision to apply a strict compliance standard was an arbitrary and capricious abuse of discretion.[5]

A.

The doctrine of substantial compliance is a tool designed to "assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance." *See Peckham v. Gem State Mut.*, 964 F.2d 1043, 1052 (10th Cir. 1994). It is "an equitable doctrine designed to avoid hardship in cases where the party does all that can reasonably be expected of him." *See Sawyer v. Sonoma Cnty.*, 719 F.2d 1001, 1008 (9th Cir. 1983).

Notably, the CERCLA regulations incorporate the doctrine of substantial compliance into an assessment of whether cleanup work on a Superfund site is "consistent with" the NCP requirements. *See* 40 C.F.R. § 300.700(c). When a private party seeks to recover response costs from a Potentially Responsible Party, it must prove that its work was consistent with the NCP. Broadly speaking, the NCP requires, under the applicable

---

[5] August Mack has alternatively requested that it be reimbursed from the Site-specific funds in the Special Account established under the Consent Decree. According to August Mack, the EPA should reimburse it from the Special Account because the Consent Decree directed that the Site-specific funds had to be "used to conduct or finance response activities at or in connection with the BJS Site." *See* Consent Decree 50. Nonetheless, the Decree provides that "[n]othing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree." *Id.* at 77. The Decree lists the parties bound by it: Vertellus, CBS, and Exxon. Thus, nothing in the Decree provides August Mack with the right to recover from the Special Account.

11

regulations, that such a private party must comply with all rules for worker health and safety; documentation and cost recovery requirements; identification of needs for response, removal, or remedial site evaluations; selection of remedies; and operation and maintenance. *See* 40 C.F.R. § 300.700(c)(5). The NCP also requires the private party to provide an opportunity for public comment. *Id.* § 300.700(c)(6).

A response action will be deemed consistent with the NCP if "the action, when evaluated as a whole, is in *substantial compliance* with the applicable requirements . . . and results in a CERCLA-quality cleanup." *See* 40 C.F.R. § 300.700(c)(3)(i) (emphasis added). The doctrine of substantial compliance thereby ensures that a Potentially Responsible Party will not escape cost liability because of a private party's "immaterial or insubstantial deviations" from NCP requirements. *Id.* § 300.700(c)(4); *see also Ashley II of Charleston, L.L.C. v. PCS Nitrogen, Inc.*, 791 F. Supp. 2d 431, 480 (D.S.C. 2011), *aff'd*, 714 F.3d 161 (4th Cir. 2013).

Nonetheless, the specific regulation relied on by the EPA in this case, 40 C.F.R. § 307.22(a), does not use "substantial compliance" language. Thus, we must first assess whether it would be appropriate to apply a substantial compliance standard to August Mack's Superfund claim. As the Ninth Circuit has explained, "in the context of *statutory* prerequisites, the [substantial compliance] doctrine can be applied only where invocation thereof would not defeat the policies of the underlying statutory provisions." *See Sawyer*, 719 F.2d at 1008 (emphasis added). As explained heretofore, there is no preauthorization requirement in the CERCLA statutory provisions — the preauthorization requirement relied upon by the EPA was created solely by the EPA itself in writing its regulations.

12

Even if the substantial compliance doctrine can only be applied when it would not defeat the policies of the underlying *regulatory* provisions, the doctrine may still be applied here. When the EPA promulgated its regulations on the preauthorization process, it identified four objectives: (1) ensuring appropriate use of the Superfund, (2) ensuring that response actions do not create environmental hazards; (3) ensuring that response actions are consistent with the NCP; and (4) ensuring that response actions are accomplished with the EPA's approval and are reasonable and necessary. *See* 54 Fed. Reg 37892-01, at *37898 (Sept. 13, 1989). We are satisfied that applying the substantial compliance doctrine would not undermine any of those objectives.

## B.

That we are satisfied that the substantial compliance doctrine can be utilized does not mean that the doctrine must be applied. An important fact, however, persuades us that applying a substantial compliance standard is compelled here. That is, the form that the EPA purports to require from an applicant for Superfund payment — EPA Form 2075-3 — is legally obsolete.

Black's Law Dictionary defines "obsolete" as "no longer in general use; out-of-date." *See Obsolete*, Black's Law Dictionary (11th ed. 2019). Although we have not definitively spoken on the issue, it is common sense that obsolete forms do not carry any legal weight. *Cf. McGavock v. City of Water Valley*, 452 F.3d 423, 427-28 (5th Cir. 2006) (ruling that obsolete regulations are "without effect").

There are several reasons that EPA Form 2075-3 — which is found at Appendix A of 40 C.F.R. § 307.22 — is legally obsolete. First, Form 2075-3 is the same today as it

13

was in 1991.  On its face and by its own terms, the Form expired more than twenty-five years ago, on December 31, 1994.  Next, the EPA itself has implicitly declared the form to be obsolete.  In 1997, the EPA's Office of Information Resources Management published a "Form Catalog."  The purpose of that Catalog was to identify all administrative and program-related forms currently used by the Agency, as well as forms declared obsolete during a survey conducted in mid-1995.  The EPA's Form Catalog does not identify Form 2075-3 as a form the EPA used in 1997; rather, Form 2075-3 was specifically listed as a form the EPA had "declared obsolete" since September 1, 1995.  Lastly, the directions on the face of Form 2075-3 are outdated.[6]

Put simply, the EPA should not arbitrarily fault August Mack for failing to strictly comply with the preauthorization process when the EPA itself has declared the required form to be obsolete.  Indeed, because EPA Form 2075-3 is obsolete, August Mack could not be required to seek preauthorization in the manner specified by the EPA and thus a substantial compliance standard is wholly appropriate and necessary.  The EPA failed to consider August Mack's allegations under the applicable substantial compliance standard, and thus the EPA's dismissal of August Mack's claim was an arbitrary and capricious

---

[6] A glaring example of the outdated directions on EPA Form 2075-3 is the instruction that "[w]hen completed this form should be sent to . . . 401 M Street, S.W., Washington, D.C. 20460" to the attention of the "Director, Office of Emergency and Remedial Response."  The Office of Emergency and Remedial Response, however, was eliminated in 2015 by the EPA as "unnecessary."  *See* 80 Fed. Reg. 77575-78 (Dec. 15, 2015).  Similarly, the Waterside Mall, which had previously housed the EPA at 401 M Street, S.W., has been demolished and no longer exists.

abuse of discretion.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.");  *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002) ("Of course, an error of law . . . is by definition an abuse of discretion.").[7]

## IV.

At bottom, it was legal error for the EPA to require strict compliance with its preauthorization process in order for August Mack to prove its Superfund claim.  Our decision today, however, does not mean that August Mack is necessarily entitled to recover on its claim for response costs.  No discovery was conducted, and whether August Mack substantially complied with the preauthorization process was not assessed in the administrative proceedings.  On remand, the EPA is entitled to dispute and litigate August Mack's compliance and any Superfund reimbursement that might be awarded.

---

[7] August Mack also contends that EPA Form 2075-3 violates the Paperwork Reduction Act because it does not display a current OMB control number.  The Paperwork Reduction Act specifies that "no person shall be subject to any penalty for failing to . . . provide information to any agency if the information collection request involved . . . does not display a current [OMB] control number."  *See United States v. Hicks*, 947 F.2d 1356, 1359 (9th Cir. 1991) (citing 44 U.S.C. § 3512).  Nonetheless, because we determine that Form 2075-3 is obsolete and thus August Mack needed only to substantially comply with the preauthorization requirement, we need not reach the Paperwork Reduction Act contention.

Pursuant to the foregoing, we vacate the district court's judgment and remand for such other and further proceedings as may be appropriate, including a remand to the EPA for further administrative proceedings.

*VACATED AND REMANDED*

DIAZ, Circuit Judge, dissenting:

My colleagues vacate the district court's dismissal of August Mack's amended complaint and remand for further proceedings, holding that the EPA may not require strict compliance with its preauthorization process in evaluating August Mack's claim for reimbursement from the Superfund. But because August Mack failed to allege even *attempted* compliance with the preauthorization requirement, I respectfully dissent.

The issue before us is whether the district court incorrectly granted the EPA's Rule 12(b)(6) motion to dismiss August Mack's amended complaint for judicial review. We review a district court's dismissal of a complaint for failure to state a claim de novo, viewing the complaint in the light most favorable to the plaintiff and accepting all well-pleaded factual allegations as true. *S.C. Dep't of Health & Envtl. Control v. Commerce & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004). Relevant here, August Mack challenges the EPA's denial of its claim for reimbursement from the Superfund for clean-up work it performed at a contaminated site. The EPA's final administrative decision is binding, conclusive, and may not be overturned unless it constitutes an arbitrary or capricious abuse of discretion. 42 U.S.C. § 9612(b)(5).

The EPA denied August Mack's claim because August Mack didn't obtain preauthorization for reimbursement from the Superfund prior to commencing its work. Pursuant to 40 C.F.R. § 307.22(a), "[n]o person may submit a claim to the [Superfund] for a response action unless that person notifies the Administrator of [the] EPA or his designee prior to taking such response action and receives preauthorization by [the] EPA." *See also* 40 C.F.R. § 307.11(a) ("Only response actions that [the] EPA has preauthorized are eligible

17

for reimbursement through the claims process"). The applicable regulations also provide that "[the] EPA shall review each preauthorization application and will notify the applicant of the decision to grant or deny preauthorization. Decisions to grant preauthorization will be memorialized in a PDD," or Preauthorization Decision Document. 40 C.F.R. § 307.23(a). "If [the] EPA grants preauthorization, the applicant may begin the approved response action subject to the terms and conditions contained in the PDD." 40 C.F.R. § 307.23(e).[*]

August Mack appealed the EPA's denial and received an administrative hearing before an ALJ. Though it's undisputed that August Mack didn't apply for preauthorization until years after completing its work, it argued that the doctrine of substantial compliance should apply to the preauthorization process because the EPA has made strict compliance impossible by failing to update its obsolete form application. The ALJ rejected this argument and held that August Mack's failure to obtain preauthorization rendered it ineligible for reimbursement from the Superfund. My colleagues hold that it was legal error for the ALJ to require strict compliance and remand for further proceedings to determine whether August Mack substantially complied.

It may well be appropriate to apply the doctrine of substantial compliance in reviewing whether a party has satisfied the regulatory requirement of seeking (and

---

[*] The only appellate court to address the preauthorization requirement is the D.C. Circuit, which upheld it as an appropriate exercise of EPA's authority under the Comprehensive Environmental Response, Compensation, and Liability Act. *See Ohio v. EPA*, 838 F.2d 1325 (D.C. Cir. 1988).

receiving) preauthorization from the EPA prior to commencing work on a response action for which the party hopes to be reimbursed from the Superfund. I also accept that the EPA's decades-long failure to update its obsolete form application weighs in favor of affording a party some leeway when reviewing whether efforts made to comply with the requirement were sufficient.

But the problem in this case is that August Mack didn't allege *any* facts that suggest it even attempted to comply, much less substantially complied, with the requirement. As the ALJ and the district court recognized, August Mack concedes that it didn't seek preauthorization for reimbursement from the Superfund because it expected to receive payment for its work from either Vertellus (who was contractually obligated to pay August Mack) or the site-specific fund. Indeed, the district court didn't fault August Mack for failing to strictly comply with the EPA's process; rather, it reasoned that August Mack's "substantial compliance argument has no merit because this is not a mere technical oversight on [August Mack]'s behalf; it is an outright failure to attempt to comply with clear federal regulations." J.A. 312.

The only facts alleged in August Mack's amended complaint that even touch on substantial compliance with the preauthorization requirement are that, in performing under the Consent Decree, Vertellus selected August Mack "as the 'Supervising Contractor' to perform the EPA-approved cleanup work," the "EPA specifically approved [August Mack] as the 'Supervising Contractor,'" and the EPA "supervised all of the work [August Mack] performed and all of the costs [it] incurred." J.A. 9. But, as the EPA points out, these allegations can't support a finding of substantial compliance with the preauthorization

19

requirement because 40 C.F.R. § 307.22(j) expressly provides that "the terms, provisions, or requirements of a court judgment, Consent Decree, administrative order (whether unilateral or on consent), or any other consensual agreement with EPA requiring a response action *do not constitute preauthorization* to present a claim to the [Superfund]." (emphasis added). Thus, because it's "irrelevant that [the] EPA authorized and supervised [August Mack]'s work," J.A. 312, the district court properly dismissed August Mack's amended complaint for failure to state a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring dismissal when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face.").

In short, even assuming the doctrine of substantial compliance applies to the preauthorization requirement, August Mack's amended complaint falls far short of alleging substantial compliance here. And August Mack's concession that it didn't even attempt to comply with the preauthorization requirement makes it inevitable that August Mack will fare no better on remand.

Because I would affirm the district court's dismissal of August Mack's amended complaint, I respectfully dissent.