ON REHEARING EN BANC

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BRICKWOOD CONTRACTORS,
INCORPORATED,

*Plaintiff-Appellant,*

v.

DATANET ENGINEERING,
INCORPORATED; JOHN V. CIGNATTA,
*Defendants-Appellees.*

No. 00-2324

BRICKWOOD CONTRACTORS,
INCORPORATED,

*Plaintiff-Appellee,*

v.

DATANET ENGINEERING,
INCORPORATED; JOHN V. CIGNATTA,
*Defendants-Appellants.*

No. 00-2325

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-98-1265-AMD)

Argued: October 28, 2003

Decided: May 26, 2004

Before WILKINS, Chief Judge, and WIDENER, WILKINSON,
NIEMEYER, LUTTIG, WILLIAMS, MICHAEL, MOTZ,
TRAXLER, KING, GREGORY, SHEDD, and DUNCAN,
Circuit Judges.

Reversed by published opinion. Judge Traxler wrote the majority opinion, in which Chief Judge Wilkins and Judges Wilkinson, Niemeyer, Williams, Michael, Motz, Gregory, Shedd, and Duncan joined. Judge Widener wrote an opinion concurring in the judgment. Judge Luttig wrote an opinion concurring in part and concurring in the judgment. Judge King wrote an opinion concurring in the judgment.

## COUNSEL

**ARGUED:** James Joseph Tansey, Washington, D.C., for Appellant. James F. Lee, Jr., LEE & MCSHANE, P.C., Washington, D.C., for Appellees. **ON BRIEF:** Brandon M. Gladstone, LEE & MCSHANE, P.C., Washington, D.C.; Edward J. Pesce, EDWARD J. PESCE, P.A., Ellicott City, Maryland, for Appellees.

## OPINION

TRAXLER, Circuit Judge:

Brickwood Contractors, Inc., filed suit against Datanet Engineering and John Cignatta (together, the "defendants"), asserting claims of defamation and tortious interference with business relations. After the district court granted summary judgment in favor of the defendants, the defendants filed a motion seeking sanctions under Rule 11 of the Federal Rules of Civil Procedure. The district court imposed against Brickwood sanctions in the amount of $15,000. Brickwood appealed, and a panel of this court reversed the sanctions order. Sitting *en banc*, we likewise reverse the district court's order imposing sanctions.[1]

---

[1]The defendants filed a cross-appeal challenging the amount of sanctions awarded by the district court. Because we reverse the imposition of sanctions, we need not consider the cross-appeal.

## I.

The facts underlying this dispute are as follows. After submitting the lowest bid, Brickwood entered into a contract with Charles County, Maryland, to repair, clean and restore a water storage tank. K&K Painting, a losing bidder, submitted a bid protest to the county, asking that Brickwood's contract be terminated. The bid protest included a letter written to K&K by defendant John Cignatta, president of defendant Datanet Engineering, Inc. In his letter, Cignatta stated that the "containment method" being used by Brickwood in connection with the removal of lead paint from the water tank violated various OSHA regulations, and the letter used the word "illegal" several times when describing the containment method being used. *See* J.A. 10-11. The county later terminated Brickwood's contract, but for reasons unconnected to the bid protest. After losing the county contract, Brickwood filed an action in federal district court against Cignatta and Datanet, asserting that the Cignatta letter amounted to defamation and tortious interference with business relations. The district court granted summary judgment in favor of the defendants, and Brickwood appealed.

A few days after judgment had been rendered but before Brickwood filed its notice of appeal, the defendants filed with the district court and served on Brickwood a motion requesting monetary sanctions under Rule 11 of the Federal Rules of Civil Procedure. In the motion, the defendants claimed that Brickwood frivolously filed this action, failed to reevaluate its case throughout discovery, and filed a meritless response to their summary judgment motion. Brickwood filed an opposition to the sanctions motion, but did not argue that the defendants failed to comply with Rule 11's 21-day "safe-harbor" provisions. *See* Fed. R. Civ. 11(c)(1)(A). The district court held the sanctions motion in abeyance pending a decision by this court on the summary judgment ruling. After this court affirmed that decision, *see Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, No. 99-1818, 2000 WL 292641 (4th Cir. March 21, 2000), the district court imposed Rule 11 sanctions against Brickwood in the amount of $15,000.

Brickwood appealed the sanctions, arguing that the defendants' Rule 11 motion did not comply with the safe-harbor provisions set

forth in Rule 11(c)(1)(A). Although Brickwood did not raise the safe-harbor issue before the district court, a panel of this court nonetheless concluded that the defendants' failure to comply with Rule 11(c)(1)(A) precluded the imposition of sanctions. The panel therefore reversed the district court's order imposing sanctions. *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 335 F.3d 293 (4th Cir. 2003). After a call for a poll by a circuit judge, a majority of active circuit judges voted to vacate the panel opinion and rehear the case *en banc*. We now reverse the district court's order imposing sanctions against Brickwood.

## II.

At the center of this case is Rule 11(c)(1)(A), which states:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed. R. Civ. P. 11(c)(1)(A).

The requirements of the rule are straightforward: The party seeking sanctions must serve the Rule 11 motion on the opposing party at least twenty-one days before filing the motion with the district court, and sanctions may be sought only if the challenged pleading is not withdrawn or corrected within twenty-one days after service of the motion. *See id.* Because the rule requires that the party submitting the challenged pleading be given an opportunity to withdraw the pleading, sanctions cannot be sought after summary judgment has been granted. *See Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 152 (4th Cir. 2002) (explaining that "the 'safe harbor' provisions of Rule 11(c)(1)(A) preclude the serving and filing of any Rule 11 motion after conclusion of the case"); *see also In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2nd Cir. 2003) ("[T]he 'safe harbor' provision func-

tions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission."); *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) (noting that because of the requirements of Rule 11(c)(1)(A), "a party cannot wait until after summary judgment to move for sanctions under Rule 11").

It is clear from the language of the rule that it imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions. *See, e.g.*, *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) ("The plain language of [Rule 11(c)(1)(A)] indicates that this notice and opportunity prior to filing is mandatory. Plaintiffs did not comply with this procedural prerequisite. Therefore, the sanction and payment of costs and attorneys' fees ordered by the district court cannot be upheld under Rule 11."); *accord Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 (8th Cir. 2003); *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001); *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528-29 (10th Cir. 1997); *Ridder*, 109 F.3d at 296; *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995). In addition, the rule serves to limit the power of the district court to impose sanctions under the rule, by expressly conditioning the court's authority to impose sanctions upon compliance with the safe-harbor provisions. *See* Fed. R. Civ. P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, *subject to the conditions stated below*, impose an appropriate sanction . . . .") (emphasis added).

Rule 11(c)(1)(A) thus establishes conditions precedent to the imposition of sanctions under the rule. If those conditions are not satisfied, the Rule 11 motion for sanctions may not be filed with the district court. If a non-compliant motion nonetheless is filed with the court, the district court lacks authority to impose the requested sanctions.[2]

---

[2]The failure of a party to comply with the safe-harbor requirements affects only the district court's authority to impose sanctions requested by a party under Rule 11(c)(1)(A). For example, failure to comply with

In this case, the defendants did not serve their Rule 11 motion on Brickwood before filing it with the district court. Moreover, because the defendants waited until after summary judgment had been granted, Brickwood could not have withdrawn or otherwise corrected the complaint even if the motion had been served before it was filed. It seems clear, then, that the defendants utterly failed to comply with the procedural requirements of Rule 11(c)(1)(A). The conclusion that the defendants failed to comply with the procedural requirements of Rule 11(c)(1)(A) would be enough, at least in most cases, to require reversal of the district court's imposition of sanctions. *See, e.g., Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (concluding that a district court's decision to impose Rule 11 sanctions should be reviewed for abuse of discretion); *Gordon*, 345 F.3d at 1030 ("The district court's awarding of sanctions against Appellant in contravention of the explicit procedural requirements of Rule 11 was an abuse of discretion.").

As mentioned previously, however, Brickwood did not argue below that the defendants' failure to comply with Rule 11(c)(1)(A) precluded an award of sanctions under Rule 11. The defendants contend that Brickwood's failure to raise the safe-harbor issue below prevents it from raising that issue on appeal. *See, e.g., Williams v. Professional Transp., Inc.*, 294 F.3d 607, 614 (4th Cir. 2003) ("Issues raised for the first time on appeal are generally not considered absent exceptional circumstances."); *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered."). The question, then, is whether we should in this case apply the general rule that we will not consider issues raised for the first time on appeal.

---

the safe-harbor provisions would have no effect on the court's authority to *sua sponte* impose sanctions under Rule 11(c)(1)(B), to award costs pursuant to 28 U.S.C.A. § 1927, or to impose sanctions within its inherent power, *see United States v. Shaffer Equipment Co.*, 11 F.3d 450, 461-62 (4th Cir. 1993).

### A.

A fundamental exception to the general rule, of course, involves issues relating to the court's subject-matter jurisdiction. "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties. *See United States v. Cotton*, 535 U.S. 625, 630 (2002). Accordingly, questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court. *See Bender*, 475 U.S. at 541 ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.") (internal quotation marks omitted). If the requirements of Rule 11(c)(1)(A) can be viewed as limitations on the district court's subject-matter jurisdiction, then Brickwood's failure to timely raise the Rule 11(c)(1)(A) issue would be irrelevant. We conclude, however, that Rule 11(c)(1)(A) does not implicate the district court's subject-matter jurisdiction, a conclusion that is largely compelled by the Supreme Court's recent decision in *Kontrick v. Ryan*, 124 S. Ct. 906 (2004).[3]

---

[3]A divided panel of this court has previously concluded that Rule 11(c)(1)(A) does not implicate the district court's subject-matter jurisdiction. *See Rector v. Approved Fed. Sav. Bank*, 265 F.3d 248, 253-54 (4th Cir. 2001). Because we are sitting *en banc*, we are not obligated to follow *Rector*, and we could overrule it were we to conclude that it was wrongly decided. *See, e.g.*, *United States v. Lancaster*, 96 F.3d 734, 742 & n.7 (4th Cir. 1996) (en banc). As we will explain, however, we believe that the *Rector* majority properly rejected the jurisdictional argument. We also note that both the First Circuit and the Ninth Circuit have at least implicitly concluded that the safe-harbor provisions do not implicate the court's subject-matter jurisdiction. *See Retail Flooring Dealers of America v. Beaulieu of America, LLC*, 339 F.3d 1146, 1150 n.5 (9th Cir. 2003) (noting that safe-harbor issue had not been raised at the district court level, but reaching the issue in order "to prevent manifest injustice."); *Nyer v. Winterthur Int'l*, 290 F.3d 456, 460 (1st Cir. 2002) (refusing to consider whether the safe-harbor provisions had been complied with because the issue had not been raised before the district court).

In *Kontrick*, a creditor filed an objection to the discharge of a Chapter 7 debtor. Although the objection was not timely under Rule 4004 of the Federal Rules of Bankruptcy Procedure, the debtor did not raise the timeliness issue until after the bankruptcy court considered the merits of the creditor's objection and determined that discharge should be denied. *See id.* at 912-13. In a motion for reconsideration, the debtor argued that the bankruptcy court lacked jurisdiction over the creditor's claim because it was untimely filed. The bankruptcy court rejected that argument and concluded that the debtor forfeited the right to question the timeliness of the objection by not raising the issue before the bankruptcy court ruled on the merits of the objection. The district court and the court of appeals agreed with the bankruptcy court, both concluding that the timeliness provisions of the relevant bankruptcy rules were not jurisdictional and could be forfeited if not timely raised. *See id.* at 913.

The Supreme Court agreed with this conclusion. The Court noted that Congress had clearly granted the bankruptcy court subject-matter jurisdiction over the creditor's objection to the discharge of the debtor and that there were no "built-in time constraints" contained in any of the statutes governing objections to discharge. *Id.* at 914. Because the district court had subject-matter jurisdiction over the creditor's claim and court procedural rules "do not create or withdraw federal jurisdiction," *id.* (internal quotation marks omitted), the Court concluded that the time constraints in the rule did not implicate the bankruptcy court's subject-matter jurisdiction. Instead, the Court described the bankruptcy rule as a "claim-processing rule[ ]" that "d[id] not delineate what cases bankruptcy courts are competent to adjudicate." *Id.*

The court rejected the debtor's argument that, while the rule did not implicate the court's subject-matter jurisdiction as that phrase is commonly understood, the rule had "the same import as provisions governing subject-matter jurisdiction" and that a debtor should therefore be permitted to raise the timeliness question at "any time in the proceedings, even initially on appeal or certiorari." *Id.* at 915. The court explained:

> The equation Kontrick advances overlooks a critical difference between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule. Characteristically, a

court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point.

*Id.* at 916. Applying the approach of the *Kontrick* court to this case leads us to conclude that the safe-harbor provisions of Rule 11 do not implicate the district court's subject-matter jurisdiction.

*Kontrick* makes it clear that the term "jurisdictional" should be used very carefully: "Clarity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Id.* at 915. We believe the Court's recommendation is applicable here. There is no question that Congress has granted federal district courts subject-matter jurisdiction over the category of case before us—one between completely diverse parties where the amount in controversy exceeds $75,000. *See* 28 U.S.C.A. § 1332 (West 1993 & Supp. 2003); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). And the parties point us to no statute that withdraws or otherwise limits this grant of subject-matter jurisdiction with regard to a procedurally defective Rule 11 motion, nor have we found any such statute. The absence of such statutory withdrawal or limitation makes it difficult to conclude that the safe-harbor provisions of Rule 11 affect the district court's subject-matter jurisdiction. *See Kontrick*, 124 S. Ct. at 914 ("Only Congress may determine a lower federal court's subject-matter jurisdiction."); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978) (explaining that "it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction"); *Snyder v. Harris*, 394 U.S. 332, 337-38 (1969) (explaining that the Court's "rule-making authority [is] limited by the inability of a court, by rule, to extend or restrict the jurisdiction conferred by a statute") (internal quotation marks omitted); Fed. R. Civ. P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts . . . .").

We recognize, of course, that there are some court rules that are consistently described as "jurisdictional." For example, cases refer to

Rule 4 of the Rules of Appellate Procedure, which governs the time for filing a notice of appeal, as "mandatory and jurisdictional." *See, e.g.*, *Browder v. Director, Dep't of Corr.*, 434 U.S. 257, 264 (1978); *Alston v. MCI Communications Corp.*, 84 F.3d 705, 706 (4th Cir. 1996).[4] Rules governing the timing of certain post-trial motions, such as Rule 59 of the Rules of Civil Procedure, have also been described as jurisdictional. *See, e.g.*, *Schneider v. Fried*, 320 F.3d 396, 402 (3rd Cir. 2003) (concluding that district court lacks jurisdiction to grant untimely Rule 59 motion); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 230 (2nd Cir. 2000) ("Neither Rule 50(b) nor Rule 59(b) gives a district court the power to grant an extension, and we have stated that Rule 6(b) makes the ten-day time limitation jurisdictional so that the failure to make a timely motion divests the district court of power to modify the trial verdict.") (internal quotation marks and alterations omitted). Given *Kontrick*'s admonition that court rules of procedure "do not create or withdraw federal jurisdiction," 124 S. Ct. at 914, and its directive to use the term "jurisdiction" only in limited circumstances, it is perhaps possible that the Court might begin to describe such rules not as jurisdictional but instead as inflexible claim-processing rules. Assuming, however, that such rules are properly described as jurisdictional, we do not believe that Rule 11(c) can be so described.

Broadly speaking, district courts have subject-matter jurisdiction over the first round of litigation proceedings, and the courts of appeal have jurisdiction over the second round. In that sense, then, in the language of *Kontrick*, different "classes of cases" fall within the "adjudicatory authority" of district courts and appellate courts—district courts have authority over trials and appellate courts have authority over appeals. *Id.* Appellate Rule 4 is thus jurisdictional in that it establishes the point of time at which the subject-matter jurisdiction of the district court ends and that of the court of appeals begins. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)

---

[4]We note, however, that at least in civil cases, Rule 4 reflects the commands of 28 U.S.C.A. § 2107, which provides, *inter alia*, that notices of appeal in civil cases must be filed within thirty days after the entry of judgment. *See* 28 U.S.C.A. § 2107(a). Thus, it is the statute that establishes jurisdictional time limits for filing notices of appeal. Rule 4 simply implements this statutory command.

("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). The rules governing the timing of post-trial motions likewise involve drawing the temporal line marking the point when the district court's jurisdiction over a case ends and the jurisdiction of the appellate court begins.

Rule 11, however, serves no similar purpose. Rule 11 simply sets forth, albeit in mandatory terms, the conditions under which sanctions may be imposed while the case is before the district court. Rule 11 is not directed at determining the point in time when subject-matter jurisdiction over a single case shifts from one court to another. Because the purpose and operation of Rule 11 are far different from those of the other rules discussed above, we do not believe that Rule 11 should be placed in the same category as those jurisdictional rules.[5] Instead, we believe that Rule 11(c) and the safe-harbor requirements set forth in subsection (c)(1)(A), like the bankruptcy rule before the Supreme Court in *Kontrick*, are properly characterized as "inflexible claim-processing rule[s]." *Kontrick*, 124 S. Ct. at 916.

We recognize that the language of the bankruptcy rule at issue in *Kontrick* is substantially different from the language at issue in this case. Rule 11(c) expressly limits the power of the district court to impose sanctions, whereas the bankruptcy rule in *Kontrick* simply establishes a time for filing an objection, without including any limitation on the court's power to act on an untimely objection.[6] But we do not believe that the rule's limitation on a district court's power is determinative of the jurisdiction question.

---

[5]Moreover, because Rule 11 sanctions must now be sought while the action is pending before the district court, it would be most unusual to conclude that Rule 11 operates to deprive the court of subject-matter jurisdiction over a procedural issue inextricably intertwined with the merits of an active, pending case over which the court otherwise has subject-matter jurisdiction.

[6]*See* Fed. R. Bankr. P. 4004(a) ("In a chapter 7 liquidation case a complaint objecting to the debtor's discharge . . . shall be filed no later than 60 days after the first date set for the meeting of creditors.").

First, we note that neither Rule 4 of the Rules of Appellate Procedure nor Rule 59 of the Rules of Civil Procedure contains language expressly limiting the power of the court to act on an untimely filing, yet these rules are considered to be jurisdictional. This suggests that it is not the language of the rule so much as the purpose of the rule that is determinative of the subject-matter jurisdiction question. And as discussed above, the purpose of Rule 11 does not provide a basis for attaching jurisdictional significance to the rule's procedural requirements.

Moreover, there are other limitations on a district court's power to act that do not act as limitations on the court's subject-matter jurisdiction. For example, a district court lacks the power to enter judgment against a party over whom the court lacks personal jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication.") (internal quotation marks and alterations omitted); *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("The requirement that a court have personal jurisdiction . . . . represents a restriction on judicial power . . . as a matter of individual liberty."). Nonetheless, unlike subject-matter jurisdiction, the requirement of personal jurisdiction may be waived. *See Ruhrgas*, 526 U.S. at 584; *Insurance Corp. of Ireland*, 456 U.S. at 703. Thus, even if the district court in fact lacked personal jurisdiction over a party, the failure to timely raise the defense may result in the enforcement of a judgment that the district court was, in one sense, powerless to render.

Similarly, a district court surely lacks the power to enter judgment in favor of a party who has not alleged or proved a cognizable cause of action. Nonetheless, the ultimate failure of a complaint to state a cause of action does not deprive the district court of subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction."); *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper

cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").

Thus, a court's power to act simply is not co-extensive with its subject-matter jurisdiction. That is, a district court may have subject-matter jurisdiction over a case but yet lack the power to act on a particular claim made within that case. While it may be tempting to equate an express limitation on a court's power to act, like that contained in Rule 11, with a limitation on the court's subject-matter jurisdiction, we must remain mindful of the Supreme Court's admonition in *Kontrick* to reserve the jurisdictional label "only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick*, 124 S. Ct. at 915. Rule 11 does not delineate a class of cases that the district court is authorized to hear, but instead sets forth inflexible rules governing the circumstances under which Rule 11 sanctions may be sought and granted. The district court, therefore, does not lose subject-matter jurisdiction over a sanctions request simply because the requesting party failed to comply with Rule 11's safe-harbor requirements. And because Rule 11(c)(1)(A) does not implicate the district court's subject matter jurisdiction, the issue of whether a party has complied with the rule is subject to forfeiture if not timely raised.[7]

In his separate opinion, Judge Luttig suggests that in addition to the jurisdictional and claim-processing rules discussed by the Supreme Court in *Kontrick*, there is a third category of rules: Rules which do not implicate a court's subject-matter jurisdiction, but are nonetheless not forfeitable by a party, and which must be enforced by a court without regard to whether compliance with the rule was timely (or

---

[7]While cases often use the terms "forfeit" and "waive" interchangeably, there is an important distinction. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted). In this case, there is no suggestion that Brickwood was aware of and intentionally relinquished its right to rely on the safe-harbor provisions of Rule 11. Brickwood thus did not waive but instead forfeited the Rule 11(c)(1)(A) issue.

ever) raised by the appropriate party. Judge King expresses a similar view in his separate opinion. While their approach to the question is not without appeal, we believe that the Supreme Court at least implicitly rejected such an approach in *Kontrick*.

The petitioner in *Kontrick* acknowledged that the bankruptcy rule at issue there did not affect the bankruptcy court's subject-matter jurisdiction. The petitioner nonetheless argued that given the unequivocal language of the rule and the fact that the Bankruptcy Rules place limits on the bankruptcy court's power to extend the time limit set forth in the rule, the rule should be treated as if it were a jurisdictional rule and thus should not be forfeitable. *See Kontrick*, 124 S. Ct. at 915; *see also* Brief of Petitioner, 2003 WL 21396448, at *12-19; Reply Brief of Petitioner, 2003 WL 22038388, at *5-8. The Supreme Court rejected that argument:

> Though Kontrick concedes that Rules 4004 and 9006(b)(3) are not properly labeled "jurisdictional" in the sense of describing a court's subject-matter jurisdiction, he maintains that the Rules have the same import as provisions governing subject-matter jurisdiction. A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance. Just so, Kontrick urges, a debtor may challenge a creditor's objection to discharge as untimely . . . any time in the proceedings, even initially on appeal or certiorari.
>
> The equation Kontrick advances overlooks a critical difference between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule. Characteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point.

*Kontrick*, 124 S. Ct. at 915 (footnote and citations omitted). This analysis seems to indicate that only issues relating to (true) subject-matter jurisdiction are not subject to the general rule that issues not timely

raised are forfeited. Thus, we find it difficult to square the Court's rejection of the petitioner's argument in *Kontrick* with the existence of a third category of non-jurisdictional-yet-not-forfeitable rules. While the Supreme Court may yet recognize such a category, we do not believe it would be proper for us to do so now.

To summarize, we conclude that the safe-harbor provisions of Rule 11 are inflexible claim-processing rules and that a district court exceeds its authority by imposing sanctions requested through a procedurally-deficient Rule 11 motion. However, because Rule 11's safe-harbor provisions do not implicate the district court's subject-matter jurisdiction, claims of non-compliance with those provisions are subject to the general rule requiring issues to be first raised with the district court. Failure to timely raise the safe-harbor issue amounts to a forfeiture of the issue.

## B.

Our conclusion that the safe-harbor protections of Rule 11 are not jurisdictional and can be forfeited if not timely raised does not, however, end our inquiry. The rule that issues raised for the first time on appeal will not be considered is a general rule only. Under certain circumstances, this court is free to consider issues that would otherwise be forfeited. *See, e.g.*, *Williams*, 294 F.3d at 614 ("Issues raised for the first time on appeal are generally not considered absent exceptional circumstances.").

In criminal cases, a court's power to consider an untimely-raised issue is governed by Rule 52(b) of the Federal Rules of Criminal Procedure, *see* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."), as fleshed out by the Supreme Court in *United States v. Olano*, 507 U.S. 725 (1993) (setting forth standards to guide the determination of whether a forfeited error should be corrected under Rule 52(b)). While the Federal Rules of Civil Procedure contain no equivalent to Rule 52(b), federal courts have long recognized their inherent power to address issues that were not timely raised. *See, e.g.*, *New York Cent. R.R. v. Johnson*, 279 U.S. 310, 318-19 (1929) ("The public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict, uninflu-

enced by the appeals of counsel to passion or prejudice. Where such paramount considerations are involved, the failure of counsel to particularize an exception will not preclude this court from correcting the error.") (internal citation omitted); *Washington Gas Light Co. v. Virginia Elec. & Power Co.*, 438 F.2d 248, 251 (4th Cir. 1971) ("[I]f deemed necessary to reach the correct result, an appellate court may *sua sponte* consider points not presented to the district court and not even raised on appeal by any party.").

This court has held that the approach set out by the Supreme Court in *Olano* should also be applied in civil cases. *See Taylor v. Virginia Union Univ.*, 193 F.3d 219, 239-40 (4th Cir. 1999) (en banc) ("Before we can exercise our discretion to correct an error not raised below in a civil case, at a minimum, the requirements of [*Olano*] must be satisfied."), *abrogated in part on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Under the *Olano* standard, there must be an error, that error must be plain, and the error must affect the appellant's substantial rights. *See Olano*, 507 U.S. at 732; *Taylor*, 193 F.3d at 240. Even if these requirements are met, this court is not required to correct the error. *See Olano*, 507 U.S. at 735 ("If the forfeited error is plain and affects substantial rights, the court of appeals has authority to order correction, but is not required to do so.") (internal quotation marks and alteration omitted); *United States v. Stockton*, 349 F.3d 755, 761 (4th Cir. 2003) (explaining that the correction of a plain error "remains within the discretion of the appellate court"). We should exercise our discretion to correct the error only if we can conclude, "after examining the particulars of the case, that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Taylor*, 193 F.3d at 240.[8]

---

[8]Cases from this circuit have used somewhat varying descriptions of the circumstances under which an unpreserved error in the civil context will be addressed on appeal. *See, e.g.*, *Dixon v. Edwards*, 290 F.3d 699, 719 (4th Cir. 2002) (stating that the court will address an unpreserved error if there is plain error *or* if the refusal to address the issue "would result in a fundamental miscarriage of justice"); *National Wildlife Fed. v. Hanson*, 859 F.2d 313, 318 (4th Cir. 1988) (explaining that an unpreserved error may be addressed if the error is plain *and* refusal to consider it would result in a miscarriage of justice). While these opinions do not engage in the same step-by-step analysis of the issue as did the *en banc* court in *Taylor* or the Supreme Court in *Olano*, we believe that these short-hand articulations of the proper standard, would, in application, lead to the same result as would a more formal application of the *Olano-Taylor* standard.

In our view, the first three *Olano* requirements are easily satisfied in this case. Because the defendants failed to comply with Rule 11's safe-harbor provisions, it was error to impose the sanctions requested by the defendants. *See Olano*, 507 U.S. at 732-33 ("Deviation from a legal rule is 'error' unless the rule has been waived."); *id.* at 733-34 ("If a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an 'error' . . . despite the absence of a timely objection."). The error is plain, because at least by the time of appeal, caselaw from this and other circuits made it clear that Rule 11's safe-harbor provisions are mandatory. *See United States v. Promise*, 255 F.3d 150, 160 (4th Cir. 2001) (en banc) ("To be plain, an error must be clear or obvious, at least by the time of appeal. An error is clear or obvious when the settled law of the Supreme Court or this circuit establishes that an error has occurred. In the absence of such authority, decisions by other circuit courts of appeals are pertinent to the question of whether an error is plain.") (internal quotation marks and citations omitted). Finally, the error affected Brickwood's substantial rights, because it was subjected to Rule 11 sanctions that the district court was not empowered to impose, given the defendants' failure to comply with Rule 11(c)(1)(A). *See Olano*, 507 U.S. at 734 (explaining that an appellant's substantial rights are affected by an error that "affected the outcome of the district court proceedings").

After carefully considering the particular circumstances of this case and the purposes behind the safe-harbor provisions of Rule 11, we also conclude that correction of the Rule 11 error is warranted. As the Sixth Circuit explained in *Ridder v. City of Springfield*, the safe-harbor provisions were added to Rule 11 in order "to reduce Rule 11's volume, formalize appropriate due process considerations of sanctions litigation, and diminish the rule's chilling effect." *Ridder*, 109 F.3d at 294. In addition,

> [b]y providing immunity from sanctions through self-regulation, the 'safe harbor' period also serves the streamlining purpose that the 1983 architects of Rule 11 originally envisioned. Undoubtedly, the drafters also anticipated that civility among attorneys and between bench and bar would be furthered by having attorneys communicate with each

> other with an eye toward potentially resolving their differ-
> ences prior to court involvement.

*Id.* (citation omitted). Allowing the imposition of sanctions to stand in this case, where there was not even an attempt to comply with the requirements of the safe-harbor provisions, would surely frustrate these important goals. Moreover, as discussed above, the very structure of the safe-harbor provisions makes it clear that a sanctions motion must be served and filed before the conclusion of the case. Rule 11(c)(1)(A) provides a "safe harbor" only if the party against whom sanctions are sought in fact has an opportunity to withdraw the challenged pleading. In this case, the defendants did not seek sanctions until after summary judgment had been granted against Brickwood, thus making it impossible for Brickwood to re-consider its position in the face of a sanctions request.

In sum, a consideration of the purposes underlying Rule 11(c)(1)(A) and the extent to which these purposes would be frustrated by affirming the imposition of sanctions in this case suggests that the interests of justice would best be served by the exercise of our discretion to correct the improperly imposed sanctions. This conclusion is strengthened when we consider the fact that all the parties involved in this case were equally blameworthy in creating the error. That is, as counsel for both sides readily admitted at oral argument, Rule 11(c)(1)(A) was not complied with by the defendants or raised by Brickwood because they were simply unaware of it. Under these circumstances, we believe it would be unjust for Brickwood to bear the full weight of the consequences of an unfamiliarity shared by all involved. Therefore, after careful consideration of all the relevant circumstances, we believe it proper to exercise our discretion to correct the error raised by Brickwood for the first time on appeal, and we therefore reverse the district court's order imposing Rule 11 sanctions.

We pause to emphasize that the determination of whether to exercise our discretion to correct an unpreserved error is a case-specific one. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."). Thus, a decision to

correct (or not to correct) an error in a particular case may provide little guidance in a later case arising under substantially different circumstances. For example, the majority in *Rector*, after concluding that Rule 11's safe-harbor provisions were subject to forfeiture, did not elect to consider the forfeited Rule 11 issue. However, in *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253 (4th Cir. 1987), a case relied upon by the panel that originally heard this case, the court elected to correct a Rule 11 error that had not even been raised by the sanctioned party on appeal. *See id.* at 256 n.2. Because the facts in *Rector* differ so substantially from the facts in the case at bar, we do not believe *Rector* to be inconsistent with the decision in *Kirby* or in this case.[9] Nonetheless, given the important purposes served by Rule 11(c)(1)(A) and the mandatory nature of its language, we believe that in most cases involving failure to comply with the safe-harbor provisions, a proper application of the *Olano-Taylor* standards will lead to correction of the error.

---

[9]In *Rector*, this court assumed for purposes of its opinion that the defendant did not comply with the safe-harbor requirements. The facts of that case, however, demonstrate the problems of proof that can be created by a failure to timely raise a Rule 11(c)(1)(A) compliance question. The plaintiffs' original complaint in that case was filed in April 1999. The Rule 11 sanction motion was filed in September 1999, but the motion itself stated that it had been served on the plaintiffs in June 1999, along with various other documents. The plaintiffs objected to the requested sanctions, but only on the grounds that the complaint was not sanctionable; the defendant's failure to comply with the safe-harbor requirements was not raised. Sanctions were imposed, and the plaintiffs appealed, but they still did not question whether the defendant had complied with the safe-harbor provisions. This court vacated the imposition of sanctions and remanded, and the district court re-imposed sanctions. Only in the second appeal of the sanctions award did the plaintiffs argue that the defendant had not complied with the safe-harbor requirements. While the defendant believed that it had served the motion in June 1999 as indicated on the motion itself (which would have satisfied the requirements of Rule 11), the defendant by the time of the second appeal (approximately two years after the sanctions were first imposed) was no longer in a position to prove that it had in fact complied with Rule 11(c)(A)(1). *See Rector*, 265 F.3d at 249-51.

### III.

To summarize, we conclude that the safe-harbor provisions of Rule 11(c)(1)(A), while mandatory, do not implicate the district court's subject-matter jurisdiction and thus may be forfeited if not timely raised. In this case, Brickwood forfeited the safe-harbor compliance issue by not raising it before the district court. Nonetheless, exercising our discretion to notice and correct plain errors, we conclude that the district court erred by imposing sanctions on Brickwood in the face of the defendants' failure to comply with the requirements of Rule 11(c)(1)(A). Accordingly, we hereby reverse the district court's order imposing sanctions on Brickwood.

*REVERSED*

WIDENER, Circuit Judge, concurring:

I concur in the result.

My opinion in this case is expressed in the panel opinion, *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 335 F.3d 293 (4th Cir. 2003), which has not changed.

LUTTIG, Circuit Judge, concurring in part and concurring in the judgment:

Federal Rule of Civil Procedure ("FRCP") 11(c) provides that a court "may" impose sanctions based on a party's motion, but specifies that the imposition of sanctions is "subject to the condition[ ]" that the movant comply with the safe harbor provisions listed in subdivision (c)(1)(A). I concur in the majority's opinion to the extent that the majority concludes that Rule 11's safe harbor provisions are "mandatory," in the sense that "failure to comply with th[ose] procedural requirements precludes the imposition of the requested sanctions"; that Rule 11(c) "serves to limit the power of the district court to impose sanctions under the rule, by expressly conditioning the court's authority to impose sanctions upon compliance with the safe harbor provisions"; and that the safe harbor provisions are thus "conditions precedent to the imposition of sanctions" such that "[i]f a non-

compliant motion nonetheless is filed with the court, the district court lacks the authority to impose the requested sanctions." *Ante* at 5. I believe that these conclusions follow from the plain text of Rule 11.

But despite these categorical-sounding conclusions, the majority goes on to hold that if no objection is made to a movant's non-compliance with the safe harbor provisions, and sanctions on that motion are imposed by the lower court, this court may yet address that error if such meets the "case-specific" and ultimately "discretion-[ary]" requirements of plain-error review. *Ante* at 18. On this score, I do not believe that the majority accords sufficient weight to Rule 11(c)'s express conditions on the court's *authority* to impose sanctions. If it is correct that a movant's non-compliance with the safe harbor provisions deprives a court of the power to impose sanctions on a party's motion, then I, like Judge King, am quite doubtful that that power is recovered through a party's failure to note the error. *See post* at 30. I certainly do not believe such to be required, and especially not by the Supreme Court's recent opinion in *Kontrick* v. *Ryan*, 124 S. Ct. 906 (2004). While I, too, would reverse the district court's imposition of Rule 11 sanctions on Brickwood, in my view the defendants' non-compliance with the safe harbor provisions, even though not objected to below, *necessitates* reversal of the sanctions. To the extent that the majority holds that reversal on this ground is not required, I concur only in the judgment of the court.

## I.

As suggested by the majority, *Kontrick* rested on a dichotomy between mandatory "rule[s] governing subject-matter jurisdiction," which cannot be waived by a party and thus can be raised at any stage in a proceeding (although not collaterally), and "inflexible claim-processing rule[s]," which, "even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Ante* at 8-9. As framed by the majority, the question of whether Brickwood forfeited its right to assert the defendants' non-compliance with the safe harbor provisions by failing to raise the issue until this appeal is to be decided by determining into which of these two categories Rule 11(c) falls. In concluding that Rule 11(c) is not "jurisdictional" within the intendment of *Kontrick*, and thus can be forfeited, the majority distinguishes Rule 11(c) from

Federal Rule of Appellate Procedure ("FRAP") 4 and FRCP 59, which in the past have been held to be "jurisdictional," and which the majority contends are properly termed "jurisdictional" even post-*Kontrick*.

I agree with the majority that Rule 11 is *not* "jurisdictional" within the intendment of *Kontrick*. But I disagree with the majority that Rules 4 and 59 *are* "jurisdictional" under *Kontrick*. As explained below, however, I believe that, while neither Rule 4 nor Rule 59 (nor, in the end, Rule 11(c)) fits within either of *Kontrick*'s categories, the conditions of all three rules are unwaivable.

A.

As an initial matter, I believe the majority has overlooked the historical and structural reasons that Rules 4 and 59 have been considered "jurisdictional," and consequently has erroneously dismissed the relevance of Rule 11(c)'s text on the basis that "neither Rule 4 . . . nor Rule 59 contains language expressly limiting the power of the court to act on an untimely filing, yet these rules are considered to be jurisdictional." *Ante* at 12. Although that description of the texts of Rules 4 and 59 is literally correct, it has little relevance. The "jurisdictional" character of these rules has been based not alone on their wording, or even so much on their wording, but on the wording of other rules, such as FRCP 6(b) and Federal Rule of Criminal Procedure ("FRCrP") 45(b), which limit the court's power to enlarge the period in which the relevant rule (*e.g.*, Rule 59) requires a party to act.[1]

---

[1]For example, FRCP 6(b) initially provides that "the court for cause shown may at any time in its discretion" order a period enlarged if request is made before expiration of the period or, if a request is made thereafter, for "excusable neglect." The rule then specifies, however, that "[a court] may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), and 60(b), except to the extent and under the conditions stated in them." As the Court observed in *Kontrick*, it is Rule 6(b) (and its counterpart, FRCrP 45(b)) that are "mandatory and jurisdictional," 124 S. Ct. at 915 (quoting *Robinson*, 361 U.S. at 228-29); Rule 59 is of the same character because of its reference in Rule 6(b). FRAP 4 is likewise referenced by a similar provision, FRAP 26(b), which authorizes extensions of time for good cause generally, but

In fact, in holding that Rule 45(b) is "mandatory and jurisdictional," the Supreme Court emphasized the importance of such language. *United States* v. *Robinson*, 361 U.S. 220, 224-26 (1960). In *Robinson*, the Court not only rested on Rule 45(b)'s "plain and clear" language of restriction, reading it to prohibit a court's recognition of a late notice of appeal, but also explained that "[i]t is quite significant that [the rule] not only prohibits the court from enlarging the period for taking an appeal, but, by the same language in the same sentence, also prohibits enlargement of the period for taking any action under Rules 33, 34 and 35, except as provided in those Rules." Prior cases interpreting the latter rules, the court emphasized, had concluded that while, for example, the "literal language of Rule [33 regarding motions for new trial] places . . . limit[s] only on the making of the motion," Rule 45(b) "prescribe[s] precise times within which the power of the courts must be confined." *Id*. at 224-26 (1960).

But even apart from the majority's failure to recognize the historical and structural explanation for the characterization of Rules 4 and 59 as "jurisdictional," the majority's explanation of how these rules could be called "jurisdictional" under *Kontrick* cannot be reconciled with the Supreme Court's analysis in that case. After explaining that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction" and discussing the misleading description of some court rules as "jurisdictional" historically, the *Kontrick* Court urged that "[c]larity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the *classes of cases* (subject-matter jurisdiction) . . . *falling within a court's adjudicatory authority*." 124 S. Ct. at 915 (emphases added). The majority attempts to characterize *trials and*

---

prohibits extending the time for filing a notice of appeal "except as authorized in Rule 4." But perhaps even more important historically is that the notice of appeal requirements for civil and criminal cases were previously set forth in FRCP 73(a) and FRCrP 37(a)(2), and referenced by the respective prohibitions on enlargements of time. The advisory notes for Rule 4's adoption make clear that the transitions from those rules to Rules 4(a) (civil appeals) and (b) (criminal appeals) were made "without any change of substance." Fed. R. App. P. 4, adv. comm. notes, 1967 adoption.

*appeals* as different "classes of cases" "in the language of *Kontrick*" for the purposes of subject-matter jurisdiction and, while admitting that the Supreme Court might eventually hold to the contrary, essentially concludes that because the limitations of Rules 4 and 59 relate to the transition of a case between trial and appeal, they are "jurisdictional" as meant by *Kontrick*. *Ante* at 10-11.

Despite the precatory phrasing of *Kontrick*'s instruction as to the proper use of "jurisdictional," there is *no* suggestion that the Court meant for "subject-matter jurisdiction," the determination of which, only paragraphs earlier, the Court explained was the exclusive province of Congress, to have anything but its ordinary meaning, a meaning that does not at all support the majority's conclusions. Indeed, the majority's analysis in this regard neglects the axioms of "subject-matter jurisdiction" recited in *Kontrick* and that opinion's application of those principles to support its analogous conclusion about the time limitations at issue in that case. *See* 124 S. Ct. at 914. Quite simply, just as with the "time constraints applicable to objections to discharge . . . contained in Bankruptcy Rules" 4004(a) and (b) and 9006(b), FRAP 4 and FRCP 59 are "Court-prescribed 'rules of practice and procedure'" authorized by the Rules Enabling Act, in this case 28 U.S.C. § 2072. *Id*. "It is axiomatic that such rules do not create or withdraw federal [subject-matter] jurisdiction." *Id*.; *accord Willy* v. *Coastal Corp.*, 503 U.S. 131, 135 (1992) ("federal courts, in adopting rules, [a]re not free to extend or restrict the jurisdiction conferred by a statute.").

That such is undeniably true for Rule 59 is borne out by the Federal Rules of Civil Procedure's explicit command that "[t]hese rules shall not be construed to extend or limit the [subject-matter] jurisdiction of the United States district courts." *Kontrick*, 124 S. Ct. at 914 (quoting Fed. R. Civ. P. 82).

The case for FRAP 4 is somewhat less straightforward due to the absence of a counterpart to FRCP 82 in the Federal Rules of Appellate Procedure. As a general matter, Congress has not granted the Supreme Court the authority to promulgate Federal Rules of Appellate Procedure that enlarge or diminish the subject-matter jurisdiction of the courts of appeals, and the version of FRCP 82 contained in the pre-2002 version of those rules (*i.e.*, former FRAP 1(b)) reflected that

fact. *See*, *e.g.*, 16A Charles A. Wright *et al.*, *Fed. Prac. & Proc. Juris. 3d* § 3947.1 (1999 & Supp. 2004) (noting that "purported conflict" between the prohibition of Rule 1(b) and the "jurisdictional" limitations of Rules 3 and 4 "was not so much a direct conflict as it was a reflection of the 'chameleon quality' of the word 'jurisdiction.'") (citation omitted). However, Rule 1(b) was deemed abrogated in 2002, in recognition of statutory amendments that allowed the Supreme Court to issue rules "to define finality for purposes of [28 U.S.C. § 1291]" and "to authorize interlocutory appeals not provided for by [28 U.S.C. § 1292]." Fed. R. App. P. 1, adv. comm. notes, 2002 amends. According to the Advisory Committee, once this power was exercised with respect to these "unquestionably jurisdictional statutes," some Federal Rules of Appellate Procedure would, in fact, "extend or limit the jurisdiction of the courts of appeals," obsoleting Rule 1(b). *Id.*

But FRAP 4 was not promulgated pursuant to either amendment, nor is there any indication that Congress similarly delegated any authority to the Supreme Court to interpret or expand on the statutory time limits on civil appeals set forth in 28 U.S.C. § 2107 (which, however, may be independently subject-matter jurisdictional, *see Kontrick*, 124 S. Ct. at 914 & n.8). Of course, that Congress, in making the above-noted amendments, felt compelled to explicitly authorize the issuance of court rules of jurisdictional effect suggests that court rules authorized by section 2072 alone lack such force, even when they are similar to pre-existing statutory requirements.

B.

That Rule 11(c) is not subject-matter jurisdictional does not, as I suggest above, resolve the question of its waivability. While it seems clear that the Supreme Court meant to criticize the use of the label "jurisdictional" for court rules that, like Rules 4 and 59, do not affect a court's subject-matter jurisdiction, there is little evidence to suggest that *Kontrick* meant to upset the settled understandings of the effect of non-compliance with these rules, notwithstanding a court's statutory jurisdiction over the subject matter of the case. The requirements of Rule 4, for example, cannot be waived; accordingly, a court is not prohibited from considering a belated motion to dismiss for an untimely notice of appeal. *See*, *e.g.*, *Torres* v. *Oakland Scavenger*

*Co.*, 487 U.S. 312, 317 (1988). Thus, provided that the legal effect of these rules was not changed *sub silentio* by the Court in *Kontrick*, rules like these would comprise a third category of rules beyond the two mentioned in *Kontrick*, presenting the question of whether Rule 11(c) might not fall within such a third category.

That said, the time limitations imposed by FRCP 6(b) on FRCP 59, and by FRAP 26(b) on FRAP 4, are strikingly similar in language and structure to the time limitations imposed by the Bankruptcy Rules in *Kontrick*.[2] While the latter rules lack the former's pedigree, if *Kontrick* truly requires that all court rules be either subject-matter jurisdictional, and thus unwaivable, or "claim-processing rules," and thus forfeitable, then principled distinction of the two sets of rules might be impossible, meaning that *both* sets of rules could be waived.

*Kontrick*, however, was decided in the limited context of "pleadings" and responses thereto. From its opening sentence, which notes (consistent with the Federal Rules of Bankruptcy Procedure) that Ryan's objections to discharge were included in a "pleading," 124 S. Ct. at 910, to its ultimate description of the time limitations at issue as "*complaint*-processing rules," *id.* at 918 (emphasis added), *Kontrick*'s use of the rules governing, and terminology of, pleadings and responses thereto is pervasive. The opinion concludes that, although, by rule, FRCP 12(b)-(h) governed that adversary proceeding, and FRCP 12(h) preserves certain defenses beyond the initial response, under that rule "[o]nly subject-matter jurisdiction is preserved post-trial." *Id.* at 917-18. Characterizing Kontrick's argument as an affirmative defense, the Court held that because he "failed to assert the time constraints . . . in a pleading or amended pleading responsive to [the] amended complaint" and because that defense was not subject-matter jurisdictional, it was forfeited. *Id.*

---

[2]For example, both sets of rules require litigants make the required filing within a certain period. Both sets instruct "the court on the limits of its discretion to grant motions for . . . enlargements" of the time for filing. *Kontrick*, 124 S. Ct. at 916. And both sets limit that discretion by allowing a court to extend a period for cause if the request is made within the period, but specify that for certain rules the court cannot extend the period except "to the extent and under the conditions" stated in the particular rules. *Compare* Fed. R. Civ. P. 6(b) *and* Fed. R. App. Proc. 26(b) *with* Fed. R. Bkrtcy. P. 4004(b), 9006(b)(3).

Given the obvious implications of *Kontrick* for other "jurisdictional" court rules, I doubt that this emphasis was accidental and, in any event, I would proceed on the assumption that it was not. Of particular note for *Kontrick*'s prospective applicability is that the relevant requirements of Rule 12 apply only to defenses to "pleadings." That term, of course, is one of art under the Federal Rules of Civil Procedure, limited to those papers defined to be such in FRCP 7, a rule that "distinguishes between 'pleadings,' which include ['a complaint' and] 'an answer,' and 'motions and other papers.')." *Perry* v. *Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000). While a notice of appeal is (somewhat obviously) not a "pleading" under these rules, neither are motions for a new trial or for sanctions pursuant to Rule 11. An objection based on non-compliance with the relevant time limitations for filing of these documents is therefore not subject to Rule 12's provisions regarding the presentation and preservation of defenses to *pleadings*; as such, *Kontrick* does not squarely control in such a context whether that objection can be waived.

This is a fine distinction, but I think it is a real and justifiable one.[3] The distinction runs throughout *Kontrick*, and stands ready to be developed by the Court in the appropriate case. Especially given that overruling by implication is disfavored, I believe that the ultimate conclusions of the Rule 4 and 59 cases as to their character must remain unchanged by *Kontrick*, and, accordingly, that these rules fall into a third category of rules which, while not limiting the court's subject-matter jurisdiction, have the effect of jurisdictional limitations and, therefore may neither be waived by a party, nor ignored by a court.[4]

---

[3]If nothing else, this distinction is appropriate given the inapplicability of the pleading framework (which makes the end of trial the deadline for raising non-jurisdictional defenses) to objections to "motions and other papers" that must be filed after the end of trial or, at least, could be so filed.

[4]While the issue is likely for the Supreme Court alone to decide, the sounder course may be to hold that non-compliance with court rules like Rule 4, which impose deadlines for filing motions or other papers (separate from non-compliance with similar statutory commands), may be subjected to plain-error review when not timely asserted (*i.e.*, when forfeited), but that such error, when plain and affecting substantial rights, *must* be addressed. Even when the parties fail to notice non-compliance

## II.

However this third category is precisely delineated, I believe that it encompasses Rule 11(c) and that Rule's safe harbor provisions. Those provisions are sufficiently analogous, in language, structure, and purpose, to either Rule 4 or Rule 59 as to warrant an equivalent interpretation, as well as the overruling of *Rector* v. *Approved Fed. Sav. Bank*, 265 F.3d 248 (4th Cir. 2001). In particular, I note that, as with those rules (through reference to their respective restriction on enlargements of time), Rule 11(c) places direct limitations on the court's authority to take a certain action except under certain conditions. Indeed, if anything, the structural case for Rule 11(c)'s unwaivability is slightly stronger, given that its conditions are more directly linked to the *ultimate* action that is limited. That is, for Rule 6(b), it is the court's authority to enlarge periods set for filing certain papers that is expressly limited, from which it is inferred that recognizing such papers when untimely is implicitly to enlarge the restricted period. *See Robinson*, 361 U.S. at 224. Rule 11(c), however, limits the court's authority to grant sanctions on a party's motion, directly conditioning that authority on satisfaction of the Rule 11's safe harbor provisions.

Arguably, the case for the unwaivability of Rule 6(b), for example, is made clearer by the juxtaposition of permissive language specifying when an enlargement of time may be granted generally, with restrictive language specifying for what rules it may not be granted except as provided for in those same rules. *See supra* at 2 n.1. But, in the end, this distinction is immaterial; as with the above-noted juxtaposition, the phrasing "may, subject to the conditions stated below" in Rule 11(c) suggests, on the one hand, a grant of discretion ("may"

---

with these rules, a court that takes the prohibited action has not complied with its own obligation to ensure that mandatory prerequisites to that action are fulfilled. Arguably, plain and substantial errors of this type necessarily "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." *United States* v. *Olano*, 507 U.S. 725, 736 (1993). Of course, under this framework, non-compliance with such rules, where the rule has been intentionally waived (as opposed to forfeited), would remain unreviewable. *See id.* at 733.

as opposed to "shall") to impose sanctions when warranted but, on the other, makes clear that the exercise of that discretion is predicated on satisfaction of the conditions listed in subdivision (c)(1)(A) ("subject to the[se] conditions"). Indeed, as both the majority and Judge King conclude, the safe harbor provisions must be read as *conditions precedent* to granting sanctions. Such a construction is entirely consistent with the Advisory Committee Notes regarding Rule 11(c), and in particular with its unequivocal statement that the amended rule now provides a "safe harbor" so that "a party *will not be subject to sanctions* on the basis of another party's motion *unless*, *after receiving the motion*," the responding party declines its opportunity to modify or withdraw its contention. Fed. R. Civ. P. 11, adv. comm. notes, 1993 amends. (emphases added); *see also post* at 31 & n.* (discussing committee notes). Therefore, satisfaction of these conditions seems no less a mandatory prerequisite to the imposition of Rule 11 sanctions on a party's motion, than compliance with the notice of appeal requirements set out in Rule 4, which do not limit an appellate court's subject-matter jurisdiction, seems a "mandatory precondition to the exercise of [appellate] jurisdiction."[5]

III.

It is not often that the Federal Rules of Civil Procedure grant a court the discretionary authority to take a certain action, but expressly prohibit the court's exercise of that discretion except upon a party's compliance with specified conditions. When such is the case, and it is clear that those conditions are mandatory prerequisites to *the court's power* to take that action — which is the interpretation of Rule 11(c) and the safe harbor provisions adopted by the majority, with which I concur — I believe that unnoticed non-compliance with those conditions, just as with the conditions of Rules 4, 59, and like rules, requires more than just additional weight in an ultimately discretionary plain-error analysis. But if I am wrong, and an objection of non-

---

[5]*Mann* v. *Lynaugh*, 840 F.2d 1194, 1197 (5th Cir. 1988). The latter phrase is reminiscent of explanations that have been offered in the past — and that I expect will be offered more frequently after *Kontrick* — of Rule 4's traditional interpretation, given that the rule "do[es] not, in a strict sense, affect the subject matter jurisdiction of the courts of appeals." Wright, *supra* (citation omitted).

compliance with the safe harbor provisions may be forfeited, then no one should be under any illusion as to the consequences: A principled analysis would require the same for the traditionally "jurisdictional" rules, such as Rules 4 and 59. It is for these reasons that I only concur in part and concur in the judgment reached by the court today.

KING, Circuit Judge, concurring in the judgment:

My friend Judge Traxler has crafted a fine opinion for the en banc Court, and I write separately to concur in the judgment. I agree that "the defendants utterly failed to comply with the procedural requirements of Rule 11(c)(1)(A)," and I concur in the opinion's reversal of the sanctions imposed on Brickwood. *See ante* p. 6. Nevertheless, I disagree with the conclusion that Brickwood forfeited the safe harbor compliance issue by not raising it in the district court. *See ante* p. 13. In my view, the issue of compliance with the safe harbor provision can never be forfeited where a movant has disregarded it.

A court lacks authority to award Rule 11 sanctions (pursuant to motion) if the Rule's safe harbor provision — a mandatory condition precedent to sanctions — has been breached. Rule 11(c) authorizes the imposition of sanctions "[i]f, after notice and a reasonable opportunity to respond, the court determines that [the standard governing representations to the court] has been violated." Fed. R. Civ. P. 11(c). The court's authority to impose an "appropriate sanction," however, is specifically "*subject to the conditions stated below*," including the safe harbor clause of Rule 11(c)(1)(A). *Id.* (emphasis added). The mandate of Rule 11 (c)(1)(A) controls the initiation of a request for Rule 11 sanctions, and its plain, scriptural term "shall not" imposes a mandatory obligation on any movant: "A motion for sanctions under this rule . . . *shall not be filed with or presented to the court* unless, within 21 days after service of the motion . . . , the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A) (emphasis added). The Advisory Committee on Rule 11 aptly described this provision as "a type of 'safe harbor,'" stating:

> [A] party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge can-

didly that it does not currently have evidence to support a specified allegation.*

Fed. R. Civ. P. 11 advisory committee's note.

As the majority properly recognizes, "[b]ecause the rule requires that the party submitting the challenged pleading be given an opportunity to withdraw the pleading, sanctions cannot be sought after summary judgment has been granted." *See ante* p. 4 (citing *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 152 (4th Cir. 2002)); *see also* Fed. R. Civ. P. 11 advisory committee's note ("Given the 'safe harbor' provision[ ] . . . , a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)."). In this dispute, the Rule 11 motion was out of time. Contrary to the safe harbor clause, it was neither served nor filed until after summary judgment had been awarded. As I observed in connection with a similar dispute, the plain language of Rule 11 mandates that "a motion for sanctions cannot be properly filed or presented to the court — period — unless the movant has complied with the safe harbor provision." *See Rector v. Approved Fed. Sav. Bank*, 265 F.3d 248, 256 (4th Cir. 2001) (King, Circuit Judge, dissenting).

The issue addressed by the en banc Court — whether Rule 11 constitutes an "inflexible claim-processing rule" or a rule that implicates a court's "jurisdiction" — is, in my humble opinion, an unnecessary inquiry. Pursuant to Rule 11(c) and the mandatory condition precedent stated therein, a court simply "has no initial authority to rule upon the merits of the motion," and it may not "consider any collateral fact (such as waiver [or forfeiture]) ostensibly bearing on the propriety of its filing, apart from ascertaining whether the safe harbor provision (or another of Rule 11's procedural requisites) has been

---

*Rule 11 was revised in 1993 to incorporate the safe harbor provision. Prior to this revision, "parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11." Fed. R. Civ. P. 11 advisory committee's note. However, "under the revision, the timely withdrawal of a contention . . . protect[s] a party against a motion for sanctions." *Id.* Accordingly, "[t]he revision . . . places greater constraints on the imposition of sanctions," seeking to "reduce the number of motions for sanctions presented to the court." *Id.*

ignored." *Id.* In this case, as in *Rector*, the safe harbor clause was ignored, thus ending our inquiry and precluding sanctions.

Although the opinion for the en banc Court reaches the proper result, I am, pursuant to the foregoing, unable to agree with its analysis. That said, I concur in the judgment.